[Civ. No. 4267. First Appellate District, Division One.—July 5, 1922.]

JOHN HANSEN, Respondent, v. NORTHWESTERN PACIFIC RAILROAD COMPANY, Appellant.

[1] NEGLIGENCE—KILLING OF COWS BY RAILROAD TRAIN—KNOWLEDGE OF ENGINEER—EVIDENCE.—In this action against a railroad company for the running over and killing of plaintiff's cows by one of defendant's trains, the evidence sufficiently shows that the engineer had ample space to stop his train and avoid the accident after knowledge of something wrong on the track.

APPEAL from a judgment of the Superior Court of Humboldt County. Denver Sevier, Judge. Affirmed.

Duty of railroad employees to keep a lookout for livestock on track, notes, 49 Am. Dec. 261; 20 Am. St. Rep. 161; 3 Ann. Cas. 591; 24 L. R. A. (N. S.) 858.

The facts are stated in the opinion of the court.

Gillett & Cutler and F. A. Cutler for Appellant.

Puter & Quinn for Respondent.

PREWETT, J., *pro tem.*—It is averred that a train of the appellant company ran over and killed thirteen blooded Jersey cows belonging to respondent, for which injury he seeks damages. The jury made an award in his favor and the appellants bring this appeal.

Respondent maintained a dairy situated about three-eighths of a mile from the railroad track. He knew that the morning passenger train of appellant company was accustomed to pass down the track each morning at about 8:19, and he always waited until it had passed before driving his cows to pasture across the track. After crossing the track at the regular crossing, the cows follow a road along parallel to the track for a distance of about 400 feet before entering the gate to their pasture. This road is separated from the right of way by a wire fence. On the morning in question the respondent heard a train go down the track at about 8:19 and he assumed that this was the regular train. In fact, however, it was a special running on the regular time, the regular passenger train being some twenty minutes late. When the respondent heard the special go by he started his cows down the lane toward the crossing. He was in the lead of the herd of 115 cows and his trained dog drove them from the rear. The dog had been at this work for the past six years. After the respondent had crossed the track and had reached a point about 400 feet distant from the crossing (which brought him about opposite the pasture gate) he heard the belated passenger train coming. He sprang over the wire fence and ran along the track waving his hat in a futile effort to flag the train. At this time he had reached a point about 500 feet from the crossing. From this point he saw the train rounding a curve and coming into view. It was then distant from him about 450 feet. The engineer was looking along the track and his engine was then distant from the crossing nearly 1,000 feet. It is not controverted that the train could have been stopped in this distance. The engineer tes-

tified that he could not see the cows on the crossing until he reached a point distant therefrom about 432 feet. There is evidence in the record which the jury may have believed that the train could have been stopped in this shorter distance. A number of the cows were on the track when the train passed. The train ran over and killed ten of these outright and severely maimed several others. This 1,000 feet of track describes an arc of a circle. Owing to a slight elevation in the territory within the arc a person at its farthest extremity could not see objects upon the crossing, though a person about midway between could see both extremities.

[1] The engineer admits that he was looking ahead. If this is so, the jury had a right to believe that he could and would have seen the respondent standing on the track and waving his hat. Seeing him, it was his duty at once to stop the train, and it is clear that he had ample space within which to accomplish that result. He knew that his train was behind time and that a special had just gone down the track on the regular schedule and that this circumstance was likely to mislead persons near the track. He knew also that the respondent had been accustomed for a long period to drive his cows every day across the track to and from pasture.

In the foregoing *résumé* the only disputed points are the position of the respondent at the time he commenced to wave his hat to the engineer and the position of the latter at that time. The story of the respondent as to these matters sounds reasonable enough, and the jury was justified in believing it. It may be added that the experts did not agree as to the distance within which the train could have been stopped, but none of them insisted that it could not have been stopped in 1,000 feet.

This state of facts meets the claim of the appellants that the respondent was guilty of contributory negligence. He had been using this crossing for his cows twice a day during the period of fourteen years and this with the knowledge of the engineers of the appellant company.

But even if the respondent had been negligent, the appellants had a space of about 1,000 feet within which to stop after knowledge of something wrong on the track. Under the doctrine of the "last clear chance" the engineer

should have brought his train to a stop. No other points are urged.

The judgment is affirmed.

Tyler, P. J., and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 31, 1922, and the following opinion then rendered thereon:

THE COURT.—In denying a rehearing of this cause after decision by the district court of appeal we desire to say that we do not approve of the statement in the last paragraph of the opinion that "under the doctrine of the 'last clear chance'" the engineer was required to bring his train to a stop. The last clear chance doctrine, in our opinion, is not involved in the case, and it is not under that doctrine that he should have brought his train to a stop.

The petition for a rehearing is denied.

Shaw, C. J., Lennon, J., Myers, J., *pro tem.*, and Waste, J., concurred.