[Civ. No. 4404.  First Appellate District, Division One.—February 26, 1923.]

## S. M. UNGER, Respondent, v. SAN FRANCISCO-OAK-LAND TERMINAL RAILWAYS (a Corporation), Appellant.

[1] NEGLIGENCE—COLLISION OF AUTOMOBILE AND STREET-CAR—INJURY TO PERSON RIDING IN AUTOMOBILE — EVIDENCE — QUESTION OF FACT.—In an action for damages for personal injuries resulting from a collison between an automobile truck in which plaintiff was riding and a street-car of defendant, the question as to whether plaintiff was negligent in riding in the truck in view of the evidence that the truck had just been purchased and that its owner, who was driving the car, was inexperienced in the mechanical operation thereof, although an experienced mechanic and driver of automobiles, was one for the jury.

[2] ID.—EVIDENCE—INSTRUCTION—LAST CLEAR CHANCE.—In this action for damages for personal injuries received by a person riding in automobile truck from a collision with a street-car when the automobile became stalled upon the track, the evidence warranted an instruction upon the doctrine of last clear chance.

[3] ID.—STALLING OF AUTOMOBILE ON CAR TRACK—DESERTION OF CAR.—The driver of an automobile or other vehicle stopped for any temporary cause in front of an approaching street-car cannot be held guilty of negligence as a matter of law if he does not desert his vehicle, at least until it is reasonably certain that an impact is unavoidable as he has a right to assume that those in charge of the operation of the approaching street-car, seeing his predicament, will not recklessly run him down, and he has a right to make a reasonable effort to start his vehicle if it is susceptible of being started and so save it and its occupants from injury, and whether his acts in so doing or attempting to do are un-

---

2. Emergency rule as applied to automobile drivers where engine stalled on track, note, 6 A. L. R. 683.

reasonable and negligent is a question of fact for the jury in view of all the circumstances of the particular case.

[4] ID.—MISCONDUCT OF JURY—MANNER OF REACHING VERDICT—CONFLICT OF AFFIDAVITS—DETERMINATION OF COURT—DISCRETION NOT ABUSED.—Where in an action for damages for personal injuries the defendant charged that the jury was guilty of misconduct in the manner in which its members arrived at their verdict, and offered in support thereof the affidavit of one of the jurors showing the resort to a method of addition and subtraction, and in opposition to such affidavit counter-affidavits were presented from several of the other jurors denying that any agreement that a juror should be bound by the computation had been made or that any of the jurors were so bound, the court did not abuse its discretion in resolving the conflict in the affidavits against the defendant's contention.

[5] NEW TRIAL—CHANGE IN JUDGESHIP—DUTY OF SUCCESSOR.—Where an action for damages for personal injuries was tried before a jury, and after the trial, but before the motion for a new trial had been brought on to hearing, the trial judge resigned, it was the duty of his successor in office to determine the motion according to his conception of the preponderance of the evidence, notwithstanding he had not seen or heard the witnesses.

[6] ID.—DETERMINATION OF MOTION FOR NEW TRIAL—MISTAKEN BELIEF OF JUDGE—APPEAL—INSUFFICIENT GROUND FOR REVERSAL.—In view of section 4½ of article VI of the constitution, the appellate court will not grant a new trial merely because the trial judge was mistaken in his conception of his duty and function in passing upon the motion by reason of the fact that he did not preside at the trial, where an examination of the record discloses no such preponderance of evidence in the defendant's favor upon any vital element in the case as would justify the conclusion that the jury was unwarranted in resolving its conflicts in the plaintiff's favor.

APPEAL from a judgment of the Superior Court of Alameda County.   Everett J. Brown and Dudley Kinsell, Judges.   Affirmed.

The facts are stated in the opinion of the court.

A. L. Whittle, Chapman & Trefethen, Morrison, Dunne & Brobeck and Orrin K. McMurray for Appellant.

Ostrander & Carey for Respondent.

RICHARDS, J.—This appeal is from a judgment in the plaintiff's favor, after a jury trial, for damages resulting

from a collision between an automobile in which the plaintiff was riding and a street-car of the appellant. The contentions of the appellant are chiefly predicated upon the evidence in the case, which will be reviewed in dealing with the various points made in the course of these contentions.

The collision occurred upon East 12th Street, in the city of Oakland, along which the street-car tracks of appellant extend, and at a point thereon a short distance east of the intersection of 12th Street with Fallon Street. The accident occurred between 5:30 and 6 o'clock in the evening of April 7, 1919, at which time there was much travel by street-cars, automobiles, and other vehicles at and in the vicinity of the immediate point where the collision took place. The plaintiff, immediately prior to the time of said collision and of his injuries, had been riding in an automobile truck owned and driven by one Parley Cook, and it is the appellant's first contention that the plaintiff's acts and conduct in riding in said automobile truck prior to and at the time of said accident constituted negligence as a matter of law which should have prevented his recovery in this action. This contention is based upon the following state of facts.

[1] On the afternoon of April 7, 1919, the plaintiff, while walking along East 12th Street, observed Parley Cook, with whom he was acquainted, in front of his residence trying to start his said automobile truck. The machine in question was an old Rambler touring car made over into a truck, which Cook had purchased that day and with the mechanical operation of which he had theretofore not been familiar. He was having difficulty in getting the machine started, and the plaintiff, observing this, went up to offer what suggestions he could in aid of Cook's effort to start the machine. The plaintiff was somewhat familiar with this type of car, having driven one like it before. He suggested to Cook that he should drain his carburetor, and he did so, and then had no difficulty in starting the machine. Cook was going down the street for the purpose of getting used to the car and plaintiff asked if he could help him, and said if he could he would be glad to ride down-town with him, and if there was anything he could show him he would be glad to do so. Cook assented to this and they boarded the car, the plaintiff knowing that Cook

had just purchased the car and had never driven a car having the same sort of gear shift before. They proceeded down 12th Street westerly, Cook with two of his younger children sitting upon the driver's seat and the plaintiff standing in the body of the truck behind, resting his hands upon the back of the seat. The two older children of Cook were also in the rear with plaintiff. The truck, thus occupied and driven, came down on East 12th Street until it passed the Civic Auditorium, when Cook turned south to cross the railroad track on 12th Street. There were at that point two main tracks on 12th Street used by the appellant for its cars, running easterly and westerly thereon, comprising several lines radiating from the center of the city of Oakland to various portions of the city and its suburbs. The plaintiff observed that several other machines were passing and called to Cook to "look out." Cook stopped the truck on the tracks of appellant and had difficulty in starting again in time to avoid a collision with one of appellant's east-bound cars. The foregoing facts, which are practically undisputed, are relied upon by the appellant to sustain its contention that the plaintiff was guilty of negligence as a matter of law in riding with Cook down 12th Street to the busy crossing where the car was stalled, and where the collision occurred. There were certain other facts, however, shown in the evidence which have an important bearing on this question. It appeared that Cook, while unfamiliar with the mechanical operation of the truck he had just purchased, was a mechanic by trade and was familiar with the mechanism and operation of automobiles generally; that he had been working as a mechanic in several garages in Oakland and other places for about two years prior to the date of this collision, during which he had driven automobiles of various types to various places throughout the state. It also appeared that on the evening in question, when the plaintiff first approached Cook in front of the latter's residence and found he was having trouble in starting his car, the trouble was not in the operation of its starting mechanism, but was in the flooding of the carburetor, and that when this was relieved Cook started his car without further trouble. It also appeared that Cook stopped at least twice on the way down 12th Street, once at a garage to get supplies, and

again as he neared the crossing where the collision occurred, and there is nothing to show that he had any difficulty in manipulating the gears or starting the car on either of these occasions.   These latter facts bear directly upon the question as to whether the plaintiff was negligent in riding down 12th Street in said truck and with Cook as the driver, under the circumstances above related.   Upon this question we think men might reasonably differ in opinion, and this being so, the question of fact as to the plaintiff's negligence in so doing would, under well-settled rules of law, be one which should have been submitted to the jury.   Conceding for the sake of argument that the plaintiff and Cook were, under the circumstances as above detailed, engaged in a common enterprise, it cannot be reasonably held that Cook, an experienced mechanic and driver of automobiles, even though inexperienced in the mechanical operations of this particular car, was, as a matter of law, negligent in driving along 12th Street in order to get used to his newly acquired car, or that he was so negligent in essaying to negotiate this particular crossing as to bar the plaintiff's right to recover as a coadventurer with him in that expedition.   We are of the opinion, therefore, that the trial court properly refused to grant the appellant's motion for a nonsuit upon that ground.

As to the appellant's contention that the plaintiff was guilty of negligence as a matter of law in not deserting the car after it had been stalled upon the appellant's track and after he had become aware of the approach of appellant's street-car, we shall deal with that contention at a later point in this opinion.

[2]   The appellant's next contention is that the evidence in the case shows that there was no negligence on the part of the defendant's employees in the operation of its said street-car at and prior to the time of said collision.   It is the claim of the appellant in this regard that the evidence was clearly and conclusively that when the plaintiff called to the driver, Cook, to "look out," whereupon Cook stopped the car, the said stopping occurred upon the north or west bound track, and it continued to stand there up to the moment before the collision; and that while it was so standing the defendant's car in approaching easterly upon its south track had a clear passage and that its motorman

was therefore justified in continuing to approach said crossing along said unobstructed track; and that it was only when he had thus proceeded to a point almost opposite to where said truck was standing that the driver thereof suddenly started his truck and ran it unexpectedly in front of said moving street-car, when it was too late to stop the same in time to avoid a collision. If these were the undisputed facts in the case it would necessarily follow that the defendant was guilty of no negligence in the premises and hence that the plaintiff would not be entitled to recover for whatever injury he suffered as the result of said collision. But the difficulty with this contention is that these facts are not undisputed. The plaintiff and Cook and the young son of Cook all testified positively that the truck was stalled upon the south track in the direct path of the approaching car and that by the time Cook had succeeded in getting it started again the car was so near as to make the collision inevitable. The testimony of these witnesses created a substantial conflict in the evidence as to the precise location at which said truck was stalled upon the appellant's tracks, and it was the exclusive function of the jury to resolve that conflict which way they believed the truth to lie. If, upon the evidence last above recited the jury found the fact to be that the truck was standing and apparently stalled upon the south track upon which the east-bound street-car of the appellant was approaching, then it would be a matter of deduction for the further determination of the jury as to whether under the conditions attending that approach the motorman in charge of said street-car was negligent in continuing the advance up to the instant of the collision with said truck. The facts upon which such deduction might reasonably be drawn are briefly these: The appellant's street-car swung into 12th Street from Oak Street, one block west of Fallon Street, coming east. From the time the said car passed the easterly line of Oak Street, the point where the collision occurred was within the range of vision of the motorman on said street-car, about six hundred feet to the eastward, and continued to be visible by him during his approach from that distance and up to the moment of the collision. There is a slight downgrade to the tracks coming eastward on 12th Street from Oak, varying from 2.71 per cent at

Oak Street to 1 per cent at or near the place of the collision. The street-car as it emerged from Oak Street was going at about the rate of fifteen miles an hour, according to the testimony of the motorman, but slowed down to ten or twelve miles an hour and coasted down toward the crossing. The motorman testified that as he came into 12th Street he saw the truck standing still at a point north of both tracks, and in this regard he is supported by the testimony of the plaintiff's witnesses. The motorman further testifies that his view of the truck at that point was intercepted by the passing of another street-car going west, and that when it had passed he again saw the truck, standing still, but at a different point, viz., upon or partly upon the north track along which said west-bound car had just passed. As to the passage of said west-bound car the motorman is also supported by the testimony of the plaintiff's witnesses, who stated that the truck had stopped at a point north of the crossing to permit said west-bound car to pass. The conflict between the testimony of said motorman and that of the plaintiff and his witnesses arises over the question as to where the truck again stopped after the passage of said west-bound car. The motorman testifies that when he next observed said truck after the passage of said west-bound car he was about fifty feet away from the point where it was then standing, and that he observed the driver of the truck looking in his direction and leaning forward over his steering-wheel, and that he proceeded, sounding his gong loudly. From this testimony of the motorman, by which the appellant is bound, the deduction is irresistible that wherever the truck of Cook had moved to and was standing after the west-bound street-car had passed by, the motorman saw it there and it continued within his unobstructed view up to the moment of the collision; and if, as the plaintiff and his witnesses testify, it was then stalled upon the south track and in the direct path of the approaching east-bound car, then the motorman saw it there. If he did so, and continued to approach so near to the standing car and at such a speed as would render unavoidable a collision, unless the driver of the truck succeeded in starting it and clearing the track, the jury would be justified in finding the motorman guilty of such negligence in so doing as would constitute

the proximate cause of the plaintiff's injury. The evidence is conflicting as to the distance the street-car was away when the motorman had a clear view of the truck standing upon the tracks. The plaintiff testified that as soon as the truck stopped upon the south track he ran to its rear end and looking up the track saw the approaching car about 450 or 500 feet away. If this evidence was accepted by the jury it would follow that for that distance the motorman saw the truck standing in his direct path upon the track. From the fact that it continued to stand there with its driver at the wheel, observing the street-car's approach and apparently trying vainly to start the truck, the jury might reasonably have concluded not only that the motorman actually knew that the truck and its occupants were in a place of danger but that he also reasonably must have known that the driver of the truck was for some reason unable to extricate himself from his place of imminent danger, in the immediate path of the approaching car. If the jury so found the facts to be it would be its duty to apply the doctrine of last clear chance to such a situation under a proper instruction from the trial court (*Hansen* v. *Northwestern Pac. R. R. Co.*, 58 Cal. App. 468 [209 Pac. 63]); and this would be so notwithstanding the driver's antecedent negligence in driving the car into such a dangerous position, if he was so negligent, in case the jury should find that being there he was doing all that a reasonable man could do to escape the impact and avoid the collision. The instruction which the trial court gave upon the doctrine of last clear chance came fairly within the rule as stated by the supreme court in the recent case of *Young* v. *Southern Pac. Co.*, 189 Cal. 746 [210 Pac. 259], and the cases therein cited. The chief objection which the appellant makes to the court's instruction upon the doctrine of last clear chance is not so much to the statement of the rule as to its application to the facts of this case as the appellant conceives and argues them to be.

[3] In the discussion of the facts of the case thus far and of the law applicable thereto, we have been considering the subject from the viewpoint of the driver of the truck rather than that of its other occupants, of whom, up to the moment of the impact, the plaintiff was one. We have done this upon the theory advanced by the appellant, which

for the sake of argument thus far we have conceded, that the negligence of the driver of the truck was imputable to the plaintiff to the extent of preventing a recovery by him, if the driver himself could not have recovered for injuries to his truck or to his own person.   A new element enters, however, into the discussion at this point, immediately and independently affecting the plaintiff's right of recovery. It arises at the moment when the plaintiff became aware that the truck was stopped or stalled upon the defendant's track in the path of an approaching car.   The plaintiff's own evidence upon this subject, by which, of course, he is bound, is that as the truck came upon the crossing he warned the driver to "look out."   This was not a direction to stop, but only to drive carefully, in view of the fact that several other machines were passing and that there was danger of a collision with them.   The driver, however, stopped his car by putting his foot on the brake and throwing out the clutch, keeping the engine running.   The plaintiff ran to the rear of the truck "to jump out," as he says, and he then saw the approaching street-car, which he estimates was from 350 to 450 feet away.   He did not jump out, but turned back to assist the driver in starting the truck.   He found him trying to switch gears, and told him to "put it in low."   The gear shift stuck, and thereupon the plaintiff, again looking up, saw the street-car bearing down upon them at a distance of but twenty-five or thirty feet away.   He ran to the rear to jump out, but as he did so the driver of the truck succeeded in starting it and had almost cleared the track when the shock of the impact between the car and the rear end of the truck came, throwing the plaintiff out directly in front of the car, which ran over his right leg, stopping within about eight feet.   This is the plaintiff's own story of how his injury occurred. It is in conflict with that of some of the defendant's witnesses, but it is supported in its essential aspects by the testimony of other eye-witnesses of the accident.   If the jury believed the plaintiff's testimony in this respect it was for them to determine whether or not the plaintiff was negligent during the moments between the time when the truck was stopped on the track and the instant of the impact.   The driver of an automobile or other vehicle stopped for any temporary cause in front of an approaching street-

car cannot be held guilty of negligence as a matter of law if he does not desert his vehicle, at least until it is reasonably certain that an impact is unavoidable. He has a right to assume that those in charge of the operation of the approaching street-car, seeing his predicament, will not recklessly run him down. He has a right to make a reasonable effort to start his vehicle if it is susceptible of being started, and so save it and its occupants from injury. Whether his acts in so doing or attempting to do were unreasonable and negligent would be a question of fact which it would be the province of the jury to determine, in view of all of the circumstances of the particular case. The same reasoning and the same rule would apply to the plaintiff herein if we assume the fact to be as the appellant insists it is, that he was engaged with the driver of the truck in a common adventure; and if he were not so engaged, but was the occupant of the truck as a passenger, a like rule must be applied to his case, since the occupants of vehicles placed in dangerous positions, as in the way of approaching cars, are not ordinarily required to desert the vehicle, nor are they ordinarily to be held guilty of negligence as a matter of law in not doing so, since they also have a right to rely upon the ability of the driver of the vehicle to extricate it from its dangerous position and upon the duty of the motorman observing his predicament not to recklessly run them down. Whether the plaintiff herein was negligent in remaining in the truck as long as he did or in attempting to leave the same and in the manner he did are questions for the determination of the jury, in view of all the circumstances of the particular case. (*Dowd* v. *Atlas Taxicab etc. Co.*, 187 Cal. 523 [202 Pac. 870].)

The appellant makes several objections to the instructions of the court other that that relating to the doctrine of last clear chance. These have been considered by us in the light of the entire body of such instructions and we do not deem it necessary to deal with them in detail, for the reason that, taken as a whole, the instructions of the trial court were not only very full and fair, but, we think, clearly embodied the law touching the questions to which they related, while practically every instruction which the defendant requested was given by the court in the precise form of such request.

[4] The appellant charges that the jury was guilty of misconduct in the manner in which its members arrived at their verdict, and offers in support thereof the affidavit of one of the jurors, to the effect that after several ballots had been taken, the jury standing nine to three for the plaintiff, one of the jurors stated that the amount of the verdict could be arrived at by a simple method of addition and subtraction; that thereupon each of the jurors then in favor of the plaintiff named the amount he or she thought should be awarded him in damages. These amounts were written down by the foreman and divided by nine and the sum of nine thousand five hundred dollars was thus arrived at. This juror stated that he agreed to be bound by the result so determined and gave up his own opinion that two thousand five hundred dollars would be an adequate sum to be awarded plaintiff because of his belief that he had agreed so to do. In opposition to this affidavit counter-affidavits were presented from several of his fellow-jurors denying that any agreement that a juror should be bound by the computation had been made or that any of said jurors were so bound, but that, on the contrary, the verdict was finally arrived at after further discussion and consideration following the foreman's said calculation. The trial court resolved this conflict in these affidavits against the defendant's contention, and we cannot say that it abused its discretion in so doing. The case of *Dixon* v. *Pluns*, 98 Cal. 384 [35 Am. St. Rep. 180, 20 L. R. A. 698, 33 Pac. 268], cited by the appellant, is not parallel as to its facts with the case at bar, and in its statement of the law rather opposes than upholds the appellant's contention.

[5] Finally, the appellant contends that it is entitled to a reversal of this case for the reason that the trial court did not properly exercise its judicial discretion in respect to the granting or denial of the defendant's motion for a new trial. This contention is based upon the following facts as described in the record before us. The cause was tried in the superior court of Alameda County, before Honorable Everett J. Brown and a jury. Judge Brown resigned his judicial position after the trial of the cause but before the motion for a new trial had been brought on to hearing. The motion for a new trial was heard before his

successor in office.   In passing upon said motion the judge then sitting in said court indicated that on the face of the record he would feel that the preponderance of the evidence on certain vital points in the case was in favor of the defendant and that he therefore would be justified in granting the motion for a new trial; but that not having seen or heard the witnesses or been able to observe their appearance, attitude, or manner of testifying during the trial, he did not feel that he was in a position to pass upon the matter of the conflict in the evidence and that he would therefore refer the whole matter to the appellate court by denying the motion for a new trial.   It may be conceded that the judge in his attitude in thus passing upon the motion for a new trial was mistaken in his conception of the duty and function of the magistrate who, not having presided or been present at the trial of a cause, was nevertheless called upon by the fact of his succession to pass upon and determine the merits of the motion for a new trial. Trial judges are not infrequently called up to decide motions for new trials in cases tried before juries in which the most material evidence is partly, or even wholly, in the form of depositions.   In such cases as in this case the judge, in considering the motion for a new trial, is deprived of the advantage of seeing and hearing the witnesses testify, but the judge should nevertheless determine the motion upon his best judgment as to where the preponderance of the evidence lies.   **[6]** It would appear in this case that had the judge, in passing upon the motion for a new trial, done this, the motion for a new trial would have been granted instead of denied; but it does not therefrom follow of necessity that this cause must for that reason be reversed upon this appeal.   This court, having had cast upon it the burden of considering this appeal, must do so in the light and under the mandate of section $4\frac{1}{2}$ of article VI of the constitution, which forbids this court to set aside a judgment for any error in any matter of procedure unless after an examination of the entire cause, including the evidence, this court shall be of the opinion that there has been a miscarriage of justice.   Assuming this burden this court has carefully examined the entire record in this case, including the evidence.   Upon such examination we are satisfied that the record herein discloses no such preponderance of evidence

in the defendant's favor upon any vital element in this case as would justify the conclusion that the jury were unwarranted in resolving its conflicts in the plaintiff's favor. Having thus concluded that the jury, which did see and hear the witnesses, were justified by the state of the evidence as a whole in returning their verdict in the plaintiff's favor, it would be a miscarriage of justice for this court to set aside that verdict and the judgment based thereon merely because the judge of the trial court in passing upon the motion for a new trial mistook his duty and function in the regard above indicated. It was an error in procedure which did not result in a miscarriage of justice.

The judgment is affirmed.

ST. SURE, J., Concurring.—I concur in the affirmance of the judgment.

Lord Mansfield is said to have given this advice to a friend newly appointed to a colonial judgeship: "Never give reasons for your decision; your judgments will very probably be right, but your reasons will almost certainly be wrong." The supreme court of this state expressed a similar thought when it said: "With the process of reasoning by which the court reached its conclusion we have nothing to do. That may have been erroneous and the ruling correct." (*Chabot* v. *Tucker*, 39 Cal. 434; *In re Kingsley*, 93 Cal. 576 [29 Pac. 244]; *Davey* v. *Southern Pac. Co.*, 116 Cal. 325 [48 Pac. 117]; *People* v. *Bailey*, 30 Cal. App. 581, 590 [158 Pac. 1036].) It is the duty of the trial court to grant a new trial when it is not satisfied with the verdict; and it is not bound by the rule as to conflicting evidence as is the appellate court. (*Condee* v. *Gyger*, 126 Cal. 546 [59 Pac. 26]; *Wendling etc. Co.* v. *Glenwood etc. Co.*, 153 Cal. 411, 417 [95 Pac. 1029]; *Weringer* v. *Rutledge*, 180 Cal. 566, 569 [182 Pac. 31].) I am of the opinion that when the trial court considered and passed upon the evidence adduced at the trial and gave its order denying the motion for a new trial it fully performed the duty enjoined by law. Upon appeal it then became the duty of this court to examine the evidence, and, if there was a conflict therein, affirm the order. That, in effect, has been done. In the lower court, before denying the motion, the judge, who had not presided at the trial, spread upon the record for

the benefit of this court his reasons for thinking why, upon the cold record, a new trial ought to be granted, and in the same breath denied the motion. We are not concerned with the mental attitude of the trial judge except as shown by his acts. In its processes of reasoning the human mind takes many slants which may be interesting from a psychological standpoint, but we are bound by the rules which the wisdom of the law has established, two of which I have stated above and now invoke. It may be that the defendant has been placed at a disadvantage by having the motion heard by a judge who could only gain his impressions from the record. Still, the rules of law placed him in the shoes of the judge who presided at the trial, clothed him with all his powers and duties, and we are not permitted to otherwise regard him or his order made in the case. (*Churchill* v. *Flournoy,* 127 Cal. 355, 362 [59 Pac. 791]; *Hausmann* v. *Sutter St. Ry. Co.,* 139 Cal. 174 [72 Pac. 905]; *Pollitz* v. *Wickersham,* 150 Cal. 244 [88 Pac. 911]; *Wendling etc. Co.* v. *Glenwood etc. Co.,* 153 Cal. 411, 417 [95 Pac. 1029].)

TYLER, P. J., Dissenting.—I dissent.

It conclusively appears from the record that the trial judge was of the opinion that a new trial should be granted, and that his sole reason for denying the same was his mistaken belief that he was without power so to do because of the fact that, there being a conflict in the evidence and he not having heard the testimony, he was unable to judge of the credibility of the witnesses as indicated by their demeanor upon the stand, and was therefore not in a position to consider the motion upon its merits. The court stated in denying the motion that it desired the appellate court reviewing its action to fully understand this as the reason for its conclusion, and it was on this precise understanding that the motion was denied.

As indicated in the prevailing opinion the court was mistaken in the conception of its duty and functions in passing upon the motion. It is the province and duty of the judge of the trial court in such a proceeding to inquire into the sufficiency of the evidence to support a verdict or finding, and to grant a new trial if in his judgment such evidence is insufficient to support the decision. This power and duty are in no manner affected or impaired by the fact

that the trial was not had before him, and that his only knowledge of the facts in the case was obtained from the cold record. (*Garton* v. *Stern*, 121 Cal. 347 [53 Pac. 904]; *Jones* v. *Sanders*, 103 Cal. 678 [37 Pac. 649].)

Such motions are addressed to the sound discretion of the trial court. (*Drathen* v. *Cohan*, 139 Cal. 310 [73 Pac. 182].) The appellate court has not the power to act merely because of its belief that the evidence preponderates one way or the other; this power resides in the trial court; and appellant herein was entitled to have that court properly exercise its discretion. This duty cannot be passed on to us.

In considering the application the court below is not bound by the rule as to conflicting evidence, as is the appellate court. (*Condee* v. *Gyger*, 126 Cal. 546 [59 Pac. 26].) As before stated, that court was of the positive opinion that a new trial should be granted, and only denied the motion under the mistaken belief that its opinion as to the effect of the evidence having been reached by a mere perusal of the record, unaided by an opportunity to observe the demeanor of the witnesses while testifying, it was unable to give effect to such opinion, notwithstanding that thereby the defendant was practically deprived of all benefit arising from its right to make the motion.

Such is not the law. There is a very serious conflict in the evidence, and appellant was entitled to have the court properly exercise its discretion in determining the motion; and failure on its part to do so manifestly deprived the appellant of the benefit which would follow from such proper exercise of discretion. (*Hughley* v. *City of Wabasha*, 69 Minn. 245 [72 N. W. 78].)

It is not for us to say that from a consideration of the entire case, including the evidence, that in our opinion the act of the court in refusing to grant the motion was justified, irrespective of error. The constitutional provision has no application to such a situation.

Nor does the fact that an appellate court is not usually concerned with the reasons given by the trial court for its action in a given matter preclude it from reviewing such action where the reason given indicates an entire misconception of the trial court's duty and power. If in the present case the judge, in passing upon the motion, had said, "Gentlemen, this is a very voluminous record; I have had

no time to read it; I have great confidence in the judgment and common sense of the jury; therefore I will deny the motion,'' it would not be questioned that these reasons, however excellent in themselves, would not justify the court's action, and that it would be the duty of this court to reverse the order. But such a case would be less aggravated than the present; for there it might well be that upon reading the testimony the court might justly deny the motion, whereas here his study of the record led him to the conclusion that he ought to grant it, but he nevertheless denied it for an obviously invalid reason.

No useful purpose would be served by a further discussion of this subject. In conclusion, however, it might be said that the error in abuse of discretion of the trial court had the effect of depriving the defendant of its substantial right of a trial by jury with all its incidents, one of which embraces the privilege of having the verdict controlled by the judge. ''The very definition of 'trial court' carries with it the idea of superintendence of the judge.'' (*Capitol Traction Co.* v. *Hof*, 174 U. S. 1 [43 L. Ed. 873, 19 Sup. Ct. Rep. 580, see, also, Rose's U. S. Notes]; *Horne* v. *Rogers*, 110 Ga. 362 [35 S. E. 715].)

For the reasons given I am of the opinion that the judgment should be reversed and a new trial granted.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 26, 1923.