[L. A. No. 8169. In Bank.—December 29, 1925.]

## SARAH M. DARLING, Respondent, v. PACIFIC ELECTRIC RAILWAY COMPANY (a Corporation), Appellant.

[1] NEGLIGENCE—LAST CLEAR CHANCE—ESSENTIAL ELEMENTS—KNOWLEDGE OF DANGER—DUTY TO EXERCISE ORDINARY CARE.—The elements of the doctrine of last clear chance, which must be present in any given case in order to warrant the invocation of that doctrine, are, that the plaintiff has been negligent, that as a result thereof she was present in a situation of danger from which she could not escape by the exercise of ordinary care, that the defendant was aware of her dangerous situation and realized, or ought to have realized, her inability to escape therefrom, that the defendant then had a clear chance to avoid injuring her by the exercise of ordinary care, and that the defendant failed to avoid the accident by the use of ordinary care; and plaintiff is not required to show that her inability to escape from the threatened danger was a physical impossibility, as the doctrine applies equally if she be wholly unaware of her danger and for that reason unable to escape it, but, whenever she becomes aware of her danger, she must thereafter exercise ordinary care for her protection.

[2] ID.—POWER TO PREVENT ACCIDENT.—The test of the last clear opportunity of avoiding the accident is whether, when both plaintiff and defendant have been guilty of negligence causing the accident, the plaintiff has ceased to have any power to prevent it and the defendant still retains the power of preventing it by the exercise of ordinary care.

---

1. Doctrine of last clear chance, note, 55 L. R. A. 418. See, also, 19 Cal. Jur. 651; 20 R. C. L. 138.

2. See 19 Cal. Jur. 654.

[3] Id. — Last Clear Chance — Knowledge of Danger — Ability to Avoid Accident.—In this action for damages for personal injuries suffered by plaintiff as the result of having been struck by an electric car, in determining whether there was evidence justifying the application of the doctrine of last clear chance two questions were presented, namely, whether or not there was any evidence showing or tending to show that plaintiff was in such a situation, after she became aware of the threatened danger, from which she could not by the exercise of ordinary care have extricated herself; and whether or not there was any evidence showing or tending to show that the motorman had actual knowledge of her situation and could by the exercise of ordinary care have avoided the accident but negligently failed to do so.

[4] Id.—Questions of Fact for Jury—Conflicting Evidence—Implied Finding—Appeal.—The evidence in said action having been such that both of such queries were questions of fact for the jury to determine, and there having been a sharp conflict in the evidence concerning the circumstances immediately preceding the accident and down to the very time of the accident, and the jury by its verdict having impliedly resolved that conflict in favor of the plaintiff, that finding was conclusive upon appeal.

[5] Id. — Conflicting Evidence — Duty of Trial Court or Jury. — Upon the triers of fact rests the responsibility to reconcile, if possible, any apparent conflict, whether the same arises upon the entire case or in the testimony of a single witness, and to effectuate all the evidence, when the nature of the case will admit of such a disposition, or if the conflict is irreconcilable, to place their own value on the contradictory evidence; and a consideration of all the evidence in this action leads to the conclusion that there was some substantial evidence to sustain the verdict of the jury in favor of plaintiff upon the theory that defendant failed to avail itself of the last clear chance to avoid injuring plaintiff.

[6] Id. — Delay in Endeavoring to Avoid Accident. — The mere fact that the plaintiff was negligently in the path of the on-coming electric car did not justify the motorman, who was obviously aware of plaintiff's position, in waiting until the very last moment before endeavoring to avoid the accident, but it was incumbent

3.   Concurrent negligence as affecting doctrine of last clear chance, notes, 7 L. R. A. (N. S.) 132, 152; 17 L. R. A. (N. S.) 707; 19 L. R. A. (N. S.) 446; 27 L. R. A. (N. S.) 379. See, also, 19 Cal. Jur. 656; 20 R. C. L. 141.

4.   See 19 Cal. Jur. 653.

5.   See 10 Cal. Jur. 1159.

6.   Last moment to which presumption that person in place of danger will seek place of safety may be indulged, note, 69 L. R. A. 554.

upon him to exert all reasonable means within his power to avoid running her down.

[7] Id. — Duty of Plaintiff to Extricate Self — Evidence — Verdict.—Plaintiff was obliged to exercise ordinary care to extricate herself from the perilous predicament in which she found herself as the result of her own negligence; and, in this action, considering all the circumstances immediately surrounding the accident, there was sufficient evidence upon which to predicate the implied finding of the jury that she did exercise such reasonable care to extricate herself after she became aware of the threatened danger.

[8] Id. — Dangerous Position of Plaintiff — Knowledge of Motorman—Evidence.—In view of the substantial, uncontradicted evidence that the motorman had a clear view of the track for a considerable distance ahead—between the car and plaintiff, there being nothing on the track to distract him—and the evidence showing his vigorous ringing of the car bell, any inference other than that he had actual knowledge of plaintiff's perilous position was unwarranted.

[9] Id. — Physician and Patient — Privileged Communications — Waiver.—The privilege conferred on a patient by subdivision 4 of section 1881 of the Code of Civil Procedure is a personal privilege given to the patient and no one, except in certain specified cases, has the right to waive the same for him.

[10] Id.—Absence of Witness—Nature of Disability—Refusal of Physician to Testify.—In this action for damages for personal injuries, in which a physician was called by plaintiff for the purpose of testifying that another witness for plaintiff was physically unable to be present in court, which evidence was for the purpose of laying a foundation for the introduction in evidence of the deposition of said absent witness that had been taken some time prior thereto, there having been no express or implied waiver by said absent witness of the privilege conferred by subdivision 4 of section 1881 of the Code of Civil Procedure, said physician was within his rights in refusing to testify, on cross-examination, concerning a matter which could not be divulged without a breach of professional confidence.

[11] Id. — Ability to Stop Car — Expert Testimony — Error as to Grade of Street.—In this action for damages for personal injuries resulting from having been struck by an electric car, the trial court did not err in refusing to strike out the testimony of an expert witness called by plaintiff for the purpose of showing the distance within which defendant's street-car could have been stopped

---

9. Waiver of privilege as to communication between physician and patient, note, 48 L. R. A. (N. S.) 395, 418. See, also, 28 R. C. L. 542.

at varying speeds, upon the ground that the testimony of said witness rested in part upon a slightly erroneous assumption as to the grade of the street along which the street-car was traveling—as such objection went rather to the weight of his testimony than his ability to testify.

[12] ID. — QUALIFICATION OF EXPERT — DISCRETION OF TRIAL COURT— APPEAL.—The qualification of a witness to testify as an expert is a matter within the sound discretion of the trial court, and where there is no showing of a manifest abuse of such discretion the ruling of that court will not be disturbed upon appeal.

[13] ID. — EXCESSIVE VERDICT — APPEAL. — A verdict will not be disturbed because excessive unless the amount of damages awarded is obviously so disproportionate to the injury proved as to justify the conclusion that the verdict was not the result of the cool and dispassionate discretion of the jury.

---

(1) 29 Cyc., p. 532, n. 31.   (2) 29 Cyc., p. 532, n. 31.   (3) 29 Cyc., p. 532, n. 31.   (4) 4 C. J., p. 858, n. 3.   (5) 36 Cyc., p. 1601, n. 19.   (6) 36 Cyc., p. 1567, n. 6.   (7) 36 Cyc., p. 1606, n. 35. (8) 36 Cyc., p. 1601, n. 13.   (9) 40 Cyc., p. 2387, n. 69, p. 2397, n. 62.   (10) 22 C. J., p. 549, n. 23.   (11) 22 C. J., p. 526, n. 11, p. 814, n. 63.   (12) 4 C. J., p. 872, n. 19.

APPEAL from a judgment of the Superior Court of Los Angeles County. Victor R. McLucas, Judge. Affirmed.

The facts are stated in the opinion of the court.

Frank Karr, R. C. Gortner and E. E. Morris for Appellant.

E. B. Drake for Respondent.

LENNON, J.—In this action the plaintiff, Sarah M. Darling, secured a judgment for damages for personal injuries in the sum of $15,000. The complaint charged the defendant generally with the negligent operation of its electric car, in consequence of which the plaintiff was permanently injured. Defendant answered, denying its own alleged negligence, and interposed as a separate defense the alleged negligence of the plaintiff as one of the proximate contributing causes of the accident.

---

13. Excessive verdict in actions for personal injuries, note, L. R. A. 1915F, 30. See, also, 8 Cal. Jur. 837; 8 R. C. L. 673.

It appears from the record before us that the plaintiff, Mrs. Darling, was struck by one of the defendant's electric cars on Brand Boulevard, between Wilson and Broadway Streets, in the city of Glendale. The car ran over plaintiff's left foot, which was so badly crushed as to render amputation necessary. The width of Brand Boulevard is 100 feet. It extends north and south, being intersected by Wilson Street on the north and by Broadway Street on the south. There is a slight downgrade from Wilson Street to Broadway Street. The defendant operates its electric cars on double tracks on this thoroughfare, the north-bound cars using the easterly tracks and the south-bound cars using the westerly tracks. The rails of the respective tracks are approximately five feet apart and the tracks are some ten feet apart, leaving intervening a narrow strip of land, wherein are embedded trolley poles, set at about 150 feet apart. The entire boulevard, including the said narrow strip of land, is paved. The location of the accident is in the heart of the business section of Glendale and, during busy times, the boulevard is subjected to heavy vehicular traffic. It was customary in this portion of Glendale for automobiles to park diagonally to the curbing and on the day of the accident both sides of the boulevard, on the block between Wilson and Broadway Streets, were lined with parked automobiles. The accident occurred on a Saturday noon, approximately in the middle of the block on said boulevard. The vehicular traffic was very heavy, as was usual on Saturdays, necessitating, at times, the running of automobiles along the car tracks in order to advance beyond other automobiles moving more slowly. The plaintiff, prior to the accident, had taken her place on the westerly curb of Brand Boulevard, near the middle of the block, preparatory to crossing the boulevard. She stepped off the curb and made her way across the boulevard in a southeasterly direction, toward the opposite side thereof. Succeeding in reaching the south-bound car track without encountering any considerable difficulty, Mrs. Darling remained there for a moment, as her direct course across the boulevard from then on was impeded by the heavy traffic moving north on the east side thereof. The street-car at this time was a short distance beyond the intersection of Wilson Street and Brand Boulevard, between 175 and 200 feet from the plaintiff.

The car did not stop at this intersection but continued going due south at a rate of speed between ten and twelve miles an hour. While crossing the intersection and until within a short distance of the plaintiff the motorman continuously and vigorously rang the bell of the car.

The trial court instructed the jury that the plaintiff was guilty of contributory negligence as a matter of law and submitted the case to them pursuant to appropriate instructions upon the sole issue of the last clear chance. A general verdict was rendered in favor of the plaintiff and judgment was entered thereon for the plaintiff, from which the defendant appeals.

In support of the appeal the defendant urges four grounds, viz.: (1) That the evidence is insufficient to justify the verdict; (2) that the trial court erred in restricting the cross-examination of a witness for the plaintiff; (3) that the trial court erred in overruling the motion to strike from the record the testimony of another witness for the plaintiff; (4) that the verdict was excessive.

[1] Upon the first ground appellant urges that there is no evidence justifying the application of the doctrine of last clear chance, inasmuch as it is claimed the plaintiff was proximately negligent down to the time of the accident. The elements of the doctrine of last clear chance, which must be present in any given case in order to warrant the invocation of that doctrine, are these: (1) That the plaintiff has been negligent; (2) That as a result thereof she was present in a situation of danger from which she could not escape by the exercise of ordinary care; (3) That the defendant was aware of her dangerous situation and realized, or ought to have realized, her inability to escape therefrom; (4) That the defendant then had a clear chance to avoid injuring her by the exercise of ordinary care; (5) That the defendant failed to avoid the accident by the use of ordinary care. It is not required of the plaintiff to show that her inability to escape from the threatened danger was a physical impossibility. The doctrine applies equally if she be wholly unaware of her danger and for that reason unable to escape it. Whenever she becomes aware of the danger, however, she must thereafter exercise ordinary care for her protection. (*Meeks* v. *Southern Pac. R. R. Co.*, 56 Cal. 513, 519 [38 Am. Rep. 67]; *Everett* v. *Los Angeles etc. Co.*, 115 Cal. 105, 127

[34 L. R. A. 350, 43 Pac. 207, 46 Pac. 889]; *Harrington* v. *Los Angeles etc. Co.,* 140 Cal. 514, 522 [98 Am. St. Rep. 85, 63 L. R. A. 238, 74 Pac. 15]; *Thompson* v. *Los Angeles etc. Co.,* 165 Cal. 748 [134 Pac. 709]; *Basham* v. *Southern Pac. Co.,* 176 Cal. 320 [168 Pac. 359]; *Palmer* v. *Tschudy,* 191 Cal. 696 [218 Pac. 36].) **[2]** The test of the last clear opportunity of avoiding the accident is whether, when both plaintiff and defendant have been guilty of negligence causing the accident, the plaintiff has ceased to have any power to prevent it and the defendant still retains the power of preventing it by the exercise of ordinary care.

**[3]** There are, then, upon this phase of the case, two questions, viz.: (1) Whether or not there was any evidence showing or tending to show that the plaintiff was in such a situation, after she became aware of the threatened danger, from which she could not by the exercise of ordinary care have extricated herself; (2) Whether or not there was any evidence showing or tending to show that the motorman had actual knowledge of her situation and could by the exercise of ordinary care have avoided the accident but negligently failed to do so. **[4]** It is not disputed that both of these queries were, admittedly, in view of the situation revealed by the evidence adduced on the entire case, questions of fact for the determination of the jury. (*Cunningham* v. *Los Angeles Ry. Co.,* 115 Cal. 561 [47 Pac. 452]; *Wood* v. *Los Angeles Ry. Corp.,* 172 Cal. 15 [155 Pac. 68]; *Lawrence* v. *Goodwill,* 44 Cal. App. 440 [186 Pac. 781]; *Unger* v. *San Francisco-Oakland Terminal Rys.,* 61 Cal. App. 125 [214 Pac. 510].) While there is a sharp conflict in the evidence concerning the circumstances immediately preceding the accident and down to the very time of the accident, the verdict of the jury having impliedly resolved that conflict in favor of the plaintiff we are precluded from disturbing their conclusion. **[5]** Upon the triers of fact rests the responsibility to reconcile, if possible, any apparent conflict, whether the same arises upon the entire case or in the testimony of a single witness, and to effectuate all the evidence, when the nature of the case will admit of such a disposition; or if the conflict is irreconcilable, to place their own value on the contradictory evidence. A consideration of all the evidence in the instant case leads us to conclude that there was some substantial evidence to sustain the ver-

dict of the jury in favor of the plaintiff upon the theory that the defendant failed to avail itself of the last clear chance to avoid injuring the plaintiff. Thus it was shown in evidence that at the time of the accident the plaintiff was sixty-seven years of age and was then, and had been for many years prior thereto, almost stone deaf. The place of the accident was in a busy downtown business section and, at the time of the accident, the automotive traffic was very heavy. The automobiles, parked diagonally to the curbing, lined both sides of the boulevard on the block in question. This tended to lessen, to some extent, the street space for the moving traffic, necessitating, at intervals, as the evidence indicates, the use of the car tracks and the intervening space between the respective car tracks. The use of this narrow strip was not precluded to vehicles because the trolley poles thereon were some distance apart and this permitted the hasty drivers to swerve into the strip in order to advance beyond the slower drivers, and then to cut in ahead of them without danger of an impact with one of the trolley poles.

Standing in his proper place in the front of the car, with no obstruction on the track to conceal what was thereon, the motorman had a clear view of the plaintiff while more than 200 feet away from her. Although he was ringing the bell "furiously," it failed to elicit any perceptible response from the plaintiff. She, meanwhile, was walking down the track, in the direct path of the approaching car, indicating that she was unaware of the threatened danger. During all the time that the car was approaching she did not at any time leave the track for a place of safety. It was not until the car was within a distance estimated variously from thirty-five to fifty feet from her that the realization of the impending peril was first brought home to her. Instinctively turning around, she saw for the first time the on-coming car to her rear. At this time, according to the testimony introduced by the plaintiff, there was heavy traffic on the west side of the track, south-bound, and there was traffic on the east side of the track, north-bound. Some of the automobiles were using the north-bound car track. One automobile, having cut in ahead of another automobile, was running upon the narrow strip between the tracks immediately opposite the plaintiff. Thus confronted with an imminent peril to her rear and with moving vehicles on both sides barring her exit from her

perilous situation, the plaintiff turned to the west, hesitated for a moment—seeing her escape in that direction impossible—and then turned completely around and attempted to make her escape by going to the east side on to the narrow strip of land between the tracks. The hesitation, the palpable inability of the plaintiff to determine upon a final course of action must have conveyed to the motorman the thought that the plaintiff would not immediately get off the track. Seeing the plaintiff in this obvious bewildered condition, as her actions clearly manifested, seeing her making ineffectual efforts to extricate herself from her precarious predicament, the motorman should have, it is apparent, as a reasonable man under the circumstances, realized that the plaintiff would not be able to escape from the on-coming car. Thus informed of the impending peril and well-nigh inevitable consequences of his continued running of the car at the same rate of speed, the motorman made no effort to slacken the speed of nor to stop the car but continued at the same speed, apparently hazarding the possibility that the plaintiff would be able to extricate herself before the car would be upon her. It was only when the car was within some ten feet of the plaintiff that the motorman doubtlessly awakening to the inevitability of the accident, applied the brakes of the car, within a distance which the car could not be stopped, going at its then rate of speed, under any circumstances. [6] The mere fact that the plaintiff was negligently in the path of the on-coming car did not justify the motorman in waiting until the very last moment before endeavoring to avoid the accident. Obviously aware of the plaintiff's position, it was incumbent on him to exert all reasonable means within his power to avoid running down the plaintiff. "Persons cannot be recklessly or wantonly run down on a railroad track, however negligent themselves, *where the circumstances are such as to convey to the mind of a reasonable man a question as to whether they will be able to get out of the way.*" (*Harrington* v. *Los Angeles Ry. Co.,* 140 Cal. 514 [98 Am. St. Rep. 85, 63 L. R. A. 238, 74 Pac. 15].)

[7] It is readily conceded, as the appellant argues, that the plaintiff was obliged to exercise ordinary care to extricate herself from the perilous predicament in which she found herself as the result of her own negligence. Consid-

ering all the circumstances immediately surrounding the accident, it seems to us that there is sufficient evidence upon which to predicate the implied finding that she did exercise such reasonable care to extricate herself, after she became aware of the threatened danger, as was required under the circumstances. While the plaintiff did not immediately walk from the track with calm decision, yet she endeavored to the best of her ability to escape, but, due to circumstances beyond her control, her efforts were ineffectual. Realizing, as he must have done, the situation of the plaintiff, it must have appeared to the motorman, as it would have appeared to any ordinarily prudent person, that unless the speed of the car was slackened or the car altogether stopped an accident would inevitably ensue. This raises the question whether, if the brakes had been applied with reasonable promptness, the accident could have been avoided. The answer to this question is to be found in the fact shown in evidence that a very slight slowing down of the car would have given Mrs. Darling sufficient time to escape. She was struck by the protruding fender of the car only after she had almost cleared herself from the on-coming car. A second or two more and she would have reached a place of safety. [8] Appellant asserts, however, that there is no positive evidence that the motorman operating defendant's electric car had actual knowledge of the plaintiff's perilous position and, in the absence thereof, there is no room for the application of the doctrine of last clear chance. There is substantial, uncontradicted evidence, however, that the motorman had a clear view of the track for a considerable distance ahead. Between the car and the plaintiff there was nothing on the track to distract him. His vigorous ringing of the car bell, in connection with those circumstances, is a clear indication that he was attempting to warn the plaintiff of the approach of the car. Any other inference would be clearly unwarranted by the evidence. That the ringing of the bell was not to warn the witness, Mrs. Tarbell, of the approach of the car is made manifest by the fact that she was never on the track and gave no indication, as far as the record shows, that she was about to precipitate herself into a position of danger. Moreover, in addition thereto, the motorman continued ringing the bell, apparently, with the

same force after he had passed the point where Mrs. Tarbell was standing.

Doctor Harold P. Hare was called by the plaintiff for the purpose of testifying that another witness, A. M. Minnock, was physically unable to be present in court. This was for the purpose of laying a foundation for the introduction of Minnock's deposition, taken some time prior thereto. It is unquestioned that the relation of physician and patient had been established as a matter of law. The physician, after testifying generally on direct examination that Minnock could not be present in court, was interrogated by counsel for the appellant, who endeavored to elicit the exact nature of the patient's infirmities. Upon his own motion the physician refused to testify in this behalf upon the ground that to do so would be to violate a professional confidence. The court sustained the witness in his refusal to testify and in so doing no error was committed.

Section 1881 of the Code of Civil Procedure provides, in part: "There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; therefore, a person cannot be examined as a witness in the following cases: . . .

"4. A licensed physician or surgeon cannot, without the consent of his patient, be examined in a civil action as to any information acquired in attending the patient, which was necessary to enable him to prescribe or act for the patient; . . . "

[9] This is a personal privilege given to the patient and no one, except in certain specified cases, has the right to waive the same for him. (*Estate of Flint,* 100 Cal. 391 [34 Pac. 863]; *Freel* v. *Market St. Ry. Co.,* 97 Cal. 40 [31 Pac. 730]; *Harrison* v. *Sutter St. Ry. Co.,* 116 Cal. 156 [47 Pac. 1019]; *Lissak* v. *Crocker Estate Co.,* 119 Cal. 442, 445 [51 Pac. 688]; *Estate of Nelson,* 132 Cal. 182 [64 Pac. 294]; *McClenahan* v. *Keyes,* 188 Cal. 574 [206 Pac. 454].) This rule of privilege applies although the patient is not a party to the action in which a disclosure is sought and is not present to object. (*Matter of Myer,* 184 N. Y. 54, 58 [6 Ann. Cas. 26, 76 N. E. 920]; *Sparer* v. *Travelers' Ins. Co.,* 185 App. Div. 861 [173 N. Y. Supp. 673].) [10] There was no express or implied waiver of this privilege by the patient in the instant case and, in the absence thereof, the physician

was clearly within his rights in refusing to testify concerning a matter, which could not be divulged without a breach of professional confidence.

In support of its contention in this behalf appellant relies upon the case of *In re Mullin*, 110 Cal. 252 [42 Pac. 645].) That case is not in point. It is clearly distinguishable from the instant case. In the Mullin case the question of privilege arose over the testimony of a physician who had attended the deceased testator professionally during his last illness and, in addition thereto, was a subscribing witness to the will in controversy. The physician was permitted, over objection, to testify concerning the condition of and the nature of the affliction of his deceased patient. On appeal it was contended that the admission of this testimony in evidence was in violation of the privilege accorded by section 1881 of the Code of Civil Procedure. In reference thereto the court said:

" . . . these objections are not to be upheld. In making his attending physician a subscribing witness to his will the deceased did exactly what he effected in the case of his attorney at law—waived the privilege and invited a full and proper examination of the matters and facts upon which their lips would otherwise have been sealed."

Appellant argues, however, that in giving his deposition Minnock, the patient, waived the privilege accorded by section 1881 of the Code of Civil Procedure the same as the testator did in the Mullin case in making his physician a subscribing witness to his will. The rule enunciated in the Mullin case, however, cannot be extended to embrace such a situation as is presented in the instant case. In the case of a will the subscribing witnesses are necessary to the attestation of the same and in making a privileged person a subscribing witness the testator must be deemed to have actually waived the privilege, for it is incumbent upon such witness to testify, if called upon, in order to prove the will, concerning the soundness of the mind of the testator. In the instant case, however, the physician was called as a witness only for the purpose of explaining the absence of the person whose deposition was sought to be offered in evidence. He did not testify, nor did he attempt to testify, concerning the person's competency to make such deposition. The instant case, therefore, cannot be said to be controlled by the

Mullin case, and in the absence of a waiver by the patient it cannot be said that the trial court improperly restricted the cross-examination of the witness with reference to privileged matter.

[11]    There is no merit in the contention that the trial court erred in refusing to strike from the record the testimony of the witness George T. Marshall. This motion to strike was based upon the theory that the witness was not shown to have had sufficient knowledge as to the weight and structure of the defendant's car or as to the grade of the street to entitle him to testify. Marshall testified that he had been employed for many years as a motorman for various street-car corporations, including the defendant corporation; that he was familiar with the type of car which struck the plaintiff, and that he was familiar with the place of the accident. He stated, in addition thereto, in response to a hypothetical question, that the car could be stopped within about twenty feet, if it were going at the rate of ten miles an hour. If the car were going at the rate of twelve miles an hour he said: "There would not be much difference at that speed." Marshall further testified that "if there was a one per cent grade (on Brand Boulevard between Wilson Street and Broadway Street) that would require very little more distance to stop, at that speed the car was supposed to be traveling. . . . " Defendant introduced evidence—the testimony of its civil engineer—that the grade was approximately 1.115 per cent. Appellant asserts, therefore, that the testimony of Marshall rested upon a false assumption as the testimony of the civil engineer "if uncontradicted . . . was binding upon the court and jury," and that, therefore, Marshall's conclusion as to distance should have been stricken out. It is obvious that this objection went rather to the weight of the witness' testimony than to his ability to testify. If the witness disclosed an ample knowledge of the subject to entitle his opinion to go to the jury, the question of the degree of his knowledge goes more to the weight of the evidence than to its admissibility. (*Howland* v. *Oakland etc. Ry. Co.*, 110 Cal. 513 [42 Pac. 983].) [12]    The qualification of a witness to testify as an expert is a matter within the sound discretion of the trial court, and where there is no showing of a manifest abuse of such discretion the ruling of that court will not be disturbed upon appeal.

(*Union C. Co.* v. *Madera etc. Irr. Co.*, 179 Cal. 774 [178 Pac. 957]; *Kinsey* v. *Pacific Mutual Life Ins. Co.*, 178 Cal. 153 [172 Pac. 1098].)

[13]   The amount of damages awarded by the jury to the plaintiff was not so large or so disproportionate as to be palpably the result of prejudice and passion.   While the plaintiff was not engaged in any gainful occupation, yet the permanent loss of her limb, the excruciating pain she suffered and the decreased capacity to move around were, doubtless, the inducing causes in leading the jury to award the stated amount of damages, rather than, as appellant contends, sympathy.   We do not think that the sum awarded as damages for the permanent loss of the plaintiff's limb was excessive in that it can be said that the award was clearly the result of passion and prejudice.   Courts have repeatedly refrained from attempting to establish any precise rule for the measurement of damages in actions for personal injuries but, rather from necessity, leave the measurement to the sound sense and fair judgment of the jury.   A verdict, therefore, "will not be disturbed because excessive 'unless the amount of damages is obviously so disproportionate to the injury proved as to justify the conclusion that the verdict is not the result of the cool and dispassionate discretion of the jury.'"   (*Morgan* v. *Southern Pac. Co.*, 95 Cal. 501 [30 Pac. 601]; *Aldrich* v. *Palmer*, 24 Cal. 513; *Rystinki* v. *Central Cal. T. Co.*, 175 Cal. 336 [165 Pac. 952]; *Redfield* v. *Oakland C. S. Ry.*, 110 Cal. 277, 286 [42 Pac. 822, 1063]; *Meek* v. *Pacific Elec. Co.*, 175 Cal. 53 [164 Pac. 1117]; *Bisinger* v. *Sacramento Lodge No. 6, B. P. O. E.*, 187 Cal. 578 [203 Pac. 768].)

Judgment affirmed.

Shenk, J., Seawell, J., Richards, J., Houser, J., *pro tem.*, Waste, J., and Lawlor, Acting C. J., concurred.