[Civ. No. 3832.   Third Appellate District.—November 12, 1929.]

R. L. BENCE, Respondent, v. TEDDY'S TAXI (a Copartnership) et al., Appellants.

Irving D. Gibson for Appellants.

Fred J. Harris, M. F. Shelley and Downey & Chester for Respondent.

THOMPSON (R. L.), J.—This is an appeal from a judgment for damages for injuries sustained by the plaintiff as a result of having been struck by a taxicab while crossing a street after leaving a street-car at an intersecting corner in Sacramento. The appellant relies chiefly upon the alleged contributory negligence of the plaintiff as a cause for reversal. The plaintiff failed to look to his right, whence the automobile which caused his injuries approached, before he proceeded to cross the street.

The plaintiff, who was seventy-five years of age, was employed as a janitor at the courthouse in Sacramento. The morning of June 16, 1928, he entered a street-car for the purpose of going to his work. Proceeding westerly along K Street this car stopped at about 5:30 o'clock A. M. at the corner of Seventh Street, opposite the postoffice building. Except for the taxicab which was involved in the accident, no other traffic was present at this point. There were but two other passengers on the street-car. The pedestrians' pathway across K Street where it intersects Seventh Street was indicated by broad white bands painted on the pavement. A safety zone four feet in width was likewise outlined on the pavement, adjacent to and parallel with the street-car track on the north side for a distance of forty-four feet east of the easterly intersecting line of Seventh Street. The distance from the northerly line of this safety zone to the northerly curbing of K Street was twelve and a half feet. This space was reserved for machines traveling westerly along K Street.

For a distance of about a block the defendants' taxicab had been following the street-car upon which the plaintiff was riding. As the street-car stopped at the corner of Seventh and K Streets, the taxicab slackened its speed, but did not stop. The plaintiff left the street-car from its front end, grasping the upright bar with his left hand as he stepped down on to the pavement at the extreme westerly end of the safety zone. He failed to look for vehicles along the street toward the rear of the street-car either before he descended from the car or immediately afterward. Promptly stepping into the pedestrians' pathway, without looking to his right, from which direction he might expect approaching vehicles, he proceeded to cross K Street to the northerly curbing. After reaching a point about eight feet from

the place where he alighted, for the first time he looked to his right and observed the taxicab rapidly bearing down upon him. He jumped forward to escape the imminent danger, but was struck and seriously injured. There is ample testimony to support the implied findings that the defendants were guilty of negligence.

In answer to the complaint for damages which was filed in this case, the defendants pleaded and relied upon the charge of contributory negligence on the part of the plaintiff for failure to look for approaching vehicles before stepping into the pathway of danger. After a careful examination of the record we are unable to find evidence of any circumstances which may excuse this necessary exercise of ordinary care. The evidence is without conflict to the effect that the plaintiff did fail to exercise this precaution for his own safety. It therefore appears to be imperative to hold that he was guilty of negligence as a matter of law, which directly contributed to the injuries which he sustained.

The plaintiff testified that when the street-car stopped at the corner of Seventh and K Streets with the front end of the car at the white mark indicating the pedestrians' pathway across K Street, he "stepped right off the (front end of the) car in the pedestrians' lane. Q. Which way were you facing when you got off the car? A. Northwest—west and north. . . . I started across the street . . . toward the postoffice on Seventh Street. . . . I got about eight feet across the street, and I turned around this way and saw the car coming. . . . I turned around towards the east, I was facing this way (indicating), . . . the (taxi) car was coming down K street on the north side, . . . going on west. . . . It (the taxicab) was about 16 or 18 feet from me when I saw it first . . . coming in the same direction as the street-car was progressing. . . . I jumped for my life to get out of the way of it. . . . The car hit me and knocked me down. . . . I didn't know anything for a little while." Upon cross-examination he further testified: "Q. And you faced to the north, or northwest (when you alighted from the street car)? A. West of north; I thought I was facing north. Q. You faced, looking down K street, did you, as you got off the car? A. Yes towards the Bon Marche corner there, . . . the northwest corner of Seventh and K streets, . . . the opposite corner from the postoffice. . . .

Q. And then you turned and walked directly toward the sidewalk in front of the postoffice? A. I did. Q. And you had gotten about eight feet, you say, when you first saw the taxicab coming? A. Approximately. . . . Q. That was the first time that you saw the taxicab, . . . wasn't it? A. Yes sir. Q. And at that time the taxicab was about sixteen feet away from you? A. Sixteen or eighteen, approximately, yes sir. . . . Q. As soon as you alighted from the street car you started to walk over towards the sidewalk, is that right? A. Yes sir. . .. . Q. Then you had come about half the distance from the street car to the curb when you first looked around to see the taxicab coming on your right, isn't that right? A. Pretty near that. . . . I turned around about the time I saw it. . . . It came right down on the north side of the zone. . . . Q. Did you see it before it got within 16 or 18 feet of you? A. No I did not, it was coming pretty fast. . . . Q. Now when you first got off the street car and put your foot down on the street for the first time, you didn't look up K street towards Eighth street, did you? A. How could I look up K street if my face was turned the other way. . . . I didn't have time to look up the street. . . . Q. I think you have made that quite clear, you didn't look, *at any time* before you got at least eight feet away from the edge of the safety zone, you didn't look up K street, that is right, isn't it? A. I think that is right.''

The plaintiff makes it very clear that he utterly failed to look to his right along the public street, from which direction he should have anticipated the approach of vehicles. He took no precaution for his own safety before stepping into the pathway of danger. The record contains no evidence to the contrary. Nor are there any circumstances which may excuse this failure to exercise ordinary precaution. It was broad daylight. The street-car was not crowded with passengers so as to obscure his view to the rear. The street was almost free from traffic. The record indicates that the defendants' taxicab was the only automobile in sight. A glance to the rear before the plaintiff alighted from the street-car, or before he walked out into the pathway of the automobiles would have disclosed this approaching car. The plaintiff had no right to assume that a passing automobile would stop until he reached the curb-

ing. The law as it then existed did not even require a machine to stop while passing a street-car which had halted at a street corner. Section 134 of the Motor Vehicle Act (Stats. 1923, p. 560) then read: "In passing any . . . street car while passengers are alighting from or boarding the same, vehicles shall be operated or driven on the right-hand side of such cars and at a rate of speed not exceeding ten miles an hour, . . . and shall at all times be operated with due care and caution so that the safety of such passengers shall be assured. . . . "

It is the invariable rule of law, which is in accordance with good reason that it becomes the duty of a person who purposes to cross a city street, to carefully look in the direction from which he may anticipate the approach of vehicles, immediately before venturing into the pathway of traffic. In the absence of excusable circumstances the failure to do so will constitute contributory negligence. (*Niosi* v. *Empire Steam Laundry,* 117 Cal. 257 [49 Pac. 185]; *Davis* v. *Breuner Co.,* 167 Cal. 683 [140 Pac. 586]; *Lord* v. *Stacy,* 68 Cal. App. 517 [229 Pac. 874]; *Finkle* v. *Tait,* 55 Cal. App. 425, 432 [203 Pac. 1031]; *Mayer* v. *Anderson,* 36 Cal. App. 740 [173 Pac. 174]; *Filson* v. *Balkins,* (Cal. App.) 273 Pac. 445, superseded by 206 Cal. 209 [273 Pac. 578].)

Conceding the negligence of the defendants in the present case with respect to the careless manner in which the taxicab was operated, the undisputed evidence showing a lack of due caution on the part of the plaintiff precludes his right to recover. It therefore becomes unnecessary to consider the other points presented by the appellants.

The judgment is reversed.

Jamison, J., *pro tem.,* and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 12, 1929, and the following opinion then rendered thereon:

THE COURT.—Upon a petition for rehearing two points are insisted upon: First, that the opinion which reversed the judgment for plaintiff upon the ground that he was guilty of contributory negligence fails to state that his

negligence was the proximate cause of the injuries which he sustained; second, that in spite of the contributory negligence of plaintiff the judgment should, nevertheless, be sustained on the doctrine of the "last clear chance." The first point is without merit. After reviewing the evidence the opinion clearly states that the failure of the plaintiff to look in the direction from which he should have anticipated the approach of vehicles, before attempting to cross the ' street, constituted contributory negligence. It was then said it was therefore necessary to reverse the judgment because "the undisputed evidence showing a lack of due caution on the part of plaintiff precludes his right of recovery." This conclusion is ample upon which to assume the appellate court was invoking the doctrine of contributory negligence which is necessarily based upon the assumption that the negligent acts or omissions on the part of the plaintiff in fact contributed to the cause of his injuries. Upon a careful review of the evidence we are unable to reach any other conclusion.

It is true that the application of the doctrine of the last clear chance to avoid the accident, may properly be a question to be submitted to and determined by the jury. (19 Cal. Jur. 653, sec. 80; also, p. 733, sec. 139.) Although a construction of the evidence in the present case which would be most favorable to the plaintiff would admit of the application of this doctrine of the last clear chance (*Darling* v. *Pacific Elec. Ry. Co.*, 197 Cal. 702 [242 Pac. 703]; *Haber* v. *Pacific Elec. Ry. Co.*, 78 Cal. App. 617, 632 [248 Pac. 741]), unfortunately this court is precluded from considering its effect, since the issue was not presented to the jury by instructions or otherwise. There is nothing in the record indicating that the jury, in rendering its verdict, considered the doctrine of the last clear chance. No instruction upon this subject was offered. It therefore becomes necessary to deny the petition for rehearing.

It is so ordered.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 9, 1930.

All the Justices concurred.