[Civ. No. 7837. First Appellate District, Division Two.—August 25, 1931.]

AMELIA ANDERSON, Respondent, v. MARKET STREET RAILWAY COMPANY (a Corporation), Appellant.

William M. Abbott, William M. Cannon and Walter H. Linforth for Appellant.

C. H. Fish and L. S. Deming for Respondent.

SPENCE, J.—In this action to recover for personal injuries judgment upon the verdict was entered in favor of plaintiff from which judgment defendant appeals.

Appellant urges several grounds for a reversal, the main contentions being: First, that there is no evidence of negligence on the part of appellant; and second, that even if it can be said that there is testimony showing negligence on appellant's part, the evidence shows that respondent was guilty of contributory negligence as a matter of law. In our opinion the latter contention must be sustained and we believe that a discussion of the remaining points raised by appellant would serve no useful purpose.

The accident occurred near the intersection of Mission and Avalon Streets in San Francisco at about 7:20 P. M. on the evening of September 14, 1929. At that point Mission Street runs in a general northerly and southerly direction. Respondent, a woman sixty-eight years of age, was struck by a north-bound street-car while she was running across the pedestrian lane from the west to the east side of said street. It does not appear that there was any other vehicle or street-car in the immediate vicinity and respondent's view of the street-car was unobstructed. Respondent had come into Mission Street on the west side at Theresa Street, a short distance north of Avalon Street. The north-bound street-car, according to her testimony, was then "far away in the other block". She was intending to board this car at the safety zone at the east side of Mission Street near Avalon Street and she proceeded in a southerly direction to Avalon Street before starting to cross. She testified that she had been taking the car frequently at this point over a period of several years. She stated that it was the custom

of the cars to stop there when people were waiting at the safety zone, "but not otherwise". The uncontradicted testimony showed that this was not a "regular stop" and that cars stopped there only when passengers were waiting at the safety zone.

Respondent was the only witness called on her behalf to testify concerning the circumstances immediately surrounding the accident and the testimony offered by appellant's witnesses with respect thereto was not helpful to her. · Examining her testimony with respect to. the movement of the street-car, we find that she observed it several times after entering upon Mission Street at Theresa Street and that it was at all times going fast. Using some of the expressions found in the record, we find that it was "going fast" when she first saw it "far away in the other block"; that later she observed it going just "as fast"; that "it hadn't slowed down any"; that thereafter when the car was at the south end of the safety zone it was "coming just as fast as it had been on the other occasions" when she saw it; that the car did not "slow down at any time", but "came fast the whole time". Referring to her own conduct, she testified that she was running because she was in a great hurry. Again employing some of the precise words used, we find the following: "Q. Did you try to run across the track in front of this car? A. Yes, I was in a great hurry. . . . Q. Yes, but as far as you went, you were running, weren't you? A. Yes, I was in a hurry to get over, but I didn't get over. The Court: Well, he wants to know if she was running; this is his question. A. I was running." The following questions and answers of respondent show the approximate relative positions of respondent and the car, the safety zone referred to being fifty-four feet in length and being located just south of the lane on which respondent was crossing: "Q. When the street car was at the other end of the safety zone, did you notice how fast it was coming? A. Very fast. Q. And you saw when it was at the other end of the safety zone and before you got upon the first track that it was coming very fast, did you? A. Yes. Q. And seeing it at that point and coming very fast, did you try to run across the track in front of it? The witness: Yes, I was in a hurry. . . . Q. At the time you started to run across the tracks, the rails on which

this particular car was traveling, wasn't the front of it within twenty feet of you? A. I cannot say how many feet. Q. Well, in distance, wasn't the front of the car as near to you as from where you are now to where I am standing? A. I cannot say that." Respondent testified that she raised her hand to signal the car when she was in the "middle of the street". At one point she testified that the car was then at the end of the safety zone, but further testified as follows: "Q. Well how close to the line that you were crossing on was the front of this on-coming car when you held up your hand as a signal? A. I cannot say definitely how far it was. I cannot say that because I was in such a hurry. Q. Well, without telling us definitely where the front of the car was, tell us about how far it was from you when you put up your hand? Was it as far as from where you are to where I am? A. It was very near, very close." The "hurry" to which respondent refers so frequently in her testimony bore relation to nothing other than the street-car itself. She stated: "Yes, I was in a hurry to take the car." She did not remember whether she saw anyone waiting on the safety zone as she crossed, but the uncontradicted testimony shows that there was no one waiting there. When asked whether the headlight was burning on the street-car, she answered: "That I cannot say, because I was in a hurry." Replying to whether there were any lights lit on the street-car, she said: "I didn't look after that; I was in a hurry." On this subject uncontradicted testimony showed that all lights on the car were lit.

█ It is true as contended by respondent that the issue of contributory negligence is ordinarily a question of fact for the jury, but there are cases in which it becomes a question of law under the undisputed facts. (*Brown* v. *Pacific Elec. Ry. Co.*, 167 Cal. 199 [138 Pac. 1005]; *Arnold* v. *San Francisco-Oakland Rys.*, 175 Cal. 1 [164 Pac. 798]; *Larrabee* v. *Western Pac. Ry. Co.*, 173 Cal. 743 [161 Pac. 750]; *Young* v. *Southern Pac. Co.*, 189 Cal. 754 [210 Pac. 259].) As was said in *Brown* v. *Pacific Elec. Ry. Co.*, *supra*, at page 205: "While it is true that ordinarily the question of contributory negligence must be left to the jury, we think this is one of the cases where 'the standard of conduct required of persons under given circumstances is so obvious as to be applicable to all persons under such

circumstances'. (*Hamlin* v. *Pacific Elec. Co.*, 150 Cal. 779 [89 Pac. 1109].) If Mr. Brown had taken the commonest precautions the accident would not have occurred, . . . " In the present case respondent's own testimony showed that she did not take any precautions or exercise any care whatsoever. She was at all times aware of the approach of the car, of its speed and of its proximity. She knew that she was on the "blind side" of the car where no passengers were admitted and knew that the car would stop only for persons waiting on the safety zone. She knew that there was nothing about the manner in which the car approached to indicate that it was stopping and, to the contrary, testified that she knew that it "came fast the whole time". Having this knowledge she proceeded to run directly into its path and the unfortunate accident is obviously accounted for by her great hurry to beat the oncoming car as she crossed the track. In our opinion the conclusion that her own negligence was a proximate cause, if not the sole proximate cause of her injuries, follows necessarily and irresistibly from the undisputed facts.

The judgment is reversed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 24, 1931, and a petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 22, 1931.