[Civ. No. 10078.   First Appellate District, Division Two.—December 10, 1936.]

WILLIAM KINGSTON, Respondent, v. HELMUT HARDT, Appellant.

Myrick & Deering and Scott, James J. Harrington and J. LeRoy Wehr for Appellant.

Olds & Olds, Walter K. Olds and James W. Harvey for Respondent.

NOURSE, P. J.—Plaintiff sued to recover damages for personal injuries. Upon trial by jury plaintiff had judgment from which defendant appeals.

The accident occurred on Van Ness Avenue in San Francisco on the evening of October 23, 1933. Plaintiff had been a passenger on a "D" car which was southbound on Van Ness Avenue. This car had stopped at a safety island about six feet to the rear of a southbound "H" car. Plaintiff had alighted from the front platform of the car, had stepped upon the safety island, and had then started to walk between the two cars toward a safety zone located east of the easterly tracks on Van Ness Avenue. He stopped behind the "H" car with one foot on the easterly rail of that track, *stuck his head out from behind the "H" car to observe traffic* and was immediately struck in the face by the windshield or other left side portion of defendant's car which he was driving in a northerly direction between the two safety zones on or near the northbound tracks and within approximately six inches of the easterly side of the standing "H" car. When he alighted from the "D" car, plaintiff looked to the south and noticed that the red or stop sign appeared on the traffic signal at the northwest corner of the intersection, and this stop signal remained so until after he was struck.

We are concerned here with but two questions—the alleged contributory negligence of the respondent, and the alleged negligence of the appellant. Upon the first question the respondent starts with the hypothesis that he had some reason to anticipate that a street car might be running north on the northbound rails, though the traffic signal would indicate that this was not probable. He asserts, however, that he had no reason to assume and should not be required to have assumed that an automobile would be traveling in that space contrary to the express provisions of law and particularly within such close proximity to the standing street cars. This contention has good reasoning back of it because if a street car had been coming upon the northbound rails there would have been a space of at least two feet between it and the side of the standing "H" car, and his position in the street would then have been free from danger. For this reason it is not within the province of the court to say that he had a total disregard for his own safety when he

was merely doing what any reasonable person might have done under the same circumstances, and was seeking to avoid the only danger which he could reasonably anticipate at the particular time and place.

Since the general surroundings and the conduct of traffic at the intersection where the accident occurred are all unusual and related so closely to the two questions of negligence and contributory negligence, we add a more complete statement of those conditions. Geary Street and Van Ness Avenue cross each other at right angles. Geary runs east and west; Van Ness runs north and south. In the middle of Geary street there is a double set of street railroad tracks. In the middle of Van Ness there is a double set of street railroad tracks. Pedestrian lanes are marked on both highways. Each lane indicates the space between the property line extended and the curb line extended. There are no others. A safety island of concrete about 6 inches high, 50 feet long and 6 feet wide is located in Van Ness about 3 feet west of the westerly rail. The south end of the island is 34 feet 6 inches from the northerly line of the pedestrian lane crossing Van Ness. About 3 feet east from the easterly rail on Van Ness and directly opposite the safety island a safety zone is indicated by buttons. That zone is about the same size as the safety island. *No pedestrian lane is indicated to either zone, either from the sidewalk or from the pedestrian lanes above mentioned.* Nothing to the contrary appearing, it must be assumed that the safety island and the safety zone were legally constructed under a legal authority conferred upon the board of works and its agents.

The location of the intersection and the operation of street cars at that point is so well known that we can take judicial notice of it. These street cars are all operated by the municipality. Three lines marked "A", "B" and "C" all run directly across the intersection east and west on Geary Street. One line marked "H" runs directly across north and south on Van Ness. Another marked "D" runs west on Geary and turns to the easterly track on Van Ness and then proceeds northerly on Van Ness. The same line returns southerly on Van Ness and there turns in a wide curve to the southerly line on Geary and then proceeds easterly on that street. Curves are also maintained from both of the

tracks on Van Ness north of Geary to route southbound Van Ness cars westerly on Geary, and from both tracks on Van Ness south of Geary to route northbound Van Ness cars easterly on Geary and in the opposite direction in each instance. The municipality maintains a complete transfer service at the intersection, and has installed the safety stations heretofore mentioned for the protection of its patrons. Thus a passenger coming south on a Van Ness Avenue "H" or "D" car and desiring to go westerly on Geary would be required to cross the easterly side of Van Ness, then the northerly side of Geary, and there board an "A", "B" or "C" car. This is the course that the plaintiff tried to follow, and the primary question presented here is whether he was guilty of negligence as a matter of law. If custom and usage has established the practice of walking from the safety island over the Van Ness tracks to the safety zone on the easterly side of that avenue, then to the curb, and then to the boarding zone on Geary, it cannot be said as a matter of law that one is guilty of contributory negligence in following that established custom. On the other hand, if no such custom or practice is established, and the course followed by the plaintiff was the course which a reasonable person would have followed under the circumstances, the question of contributory negligence is equally one to be determined by the jury.

The appellant relies upon section 10 of an ordinance of the city and county of San Francisco which reads in part:

"When within the Central Traffic District or a Business District, no pedestrian shall cross a roadway other than by a crosswalk.

"Outside of the Central Traffic District or a Business District no pedestrian shall cross a roadway other than by a route at right angles to the curb, and when crossing at any place other than a crosswalk shall yield the right of way to all vehicles upon the roadway.

"It shall be unlawful for any person to be in any roadway other than in a safety zone or crosswalk, provided that this provision shall not be construed to prevent the necessary use of a roadway by a pedestrian."

The parties concede that the intersection is in a business district, but the respondent contends that the peculiar and unusual circumstances of the crossing and recrossing of

traffic at the intersection and the location of the additional safety zones make the application of the ordinance impossible, at least to such an extent that the question must be left to the jury to decide whether, in view of all these circumstances and conditions, the respondent pursued the course of a reasonable man. The proviso in the last portion of the ordinance quoted supports this contention. When the respondent had alighted from the "D" car and stepped on the safety island, he was entitled to leave that island and go on his way. He was bound to determine whether to go north, east, south or west. *He could not go in any direction in a pedestrian lane.* Whatever direction he walked was in violation of the ordinance, if that ordinance is given the broad interpretation for which the appellant contends. The latter contention does violence to the ordinance and gives no force or effect to the language " . . . provided that this provision shall not be construed to prevent the necessary use of a roadway by a pedestrian". Giving that proviso the effect to which it is entitled, it seems clear that the respondent was entitled to go in any direction and that it was a question for the jury as to whether he exercised due care.

The evidence is sufficient to support the charge of appellant's negligence. He was driving at a dangerous rate of speed upon the street car tracks to the left of the center of the avenue. He cut between a safety zone and two standing street cars, running so close to the latter that his windshield clipped respondent's face as it protruded from behind the first street car. He crossed the intersection either after the red stop light had flashed or so close to that time as to make his progress over the intersection inherently dangerous. In "riding the rails" he says that practice is prohibited only on Market Street from Van Ness to Embarcadero. This is true as far as the city ordinance is concerned. But section 122 of the California Vehicle Act (Deering's Gen. Laws 1931, Act 5128), as it read at the time of the accident, provided that: "Upon all highways of sufficient width, other than one-way highways, the driver of a vehicle shall drive the same upon the right half of the highway, . . . (b) In driving upon the right half of a highway the driver shall drive *as closely as practicable to the right-hand edge or curb of the highway* except when overtaking or passing another

vehicle, or when placing a vehicle in position to make a left turn.'' All the rules of the road reserve the middle of the highway for the purpose of passing other vehicles, unless definite lanes are marked for the traffic, and all vehicles are required to travel upon the right-hand side if that portion of the highway is clear of traffic or obstruction. Here the defendant was the only one crossing against the traffic signal and the jury had ample evidence from which it could draw the inference that he was negligent.

We have examined the instructions of which appellant complains and are satisfied that appellant suffered no prejudice from any of them.

No other questions require discussion. It is simply a ''fact'' case with no error appearing in the record.

The judgment is affirmed.

Sturtevant, J., concurred.

SPENCE, J., Dissenting.—I dissent. Appellant's main contentions are first, that the evidence was insufficient to show negligence on the part of appellant and second, that the uncontradicted evidence showed that respondent was guilty of contributory negligence as a matter of law.

It may be assumed for the purpose of this discussion that there was sufficient evidence to sustain an implied finding of negligence upon the part of appellant. It should be stated, however, that the evidence introduced by respondent showed that appellant was traveling no faster than approximately 25 to 30 miles per hour. It should be further stated that the uncontradicted evidence showed that appellant did not enter the intersection against the traffic signal and that appellant was not driving his car to the left of the center line of Van Ness Avenue.

Turning to appellant's second main contention, I am of the opinion that it should be sustained. This conclusion is reached without regard to the alleged violation by respondent of section 131½ of the Vehicle Act, now section 562 of the Vehicle Code (see *Gaston* v. *Hisashi Tsuruda,* 5 Cal. App. (2d) 639 [43 Pac. (2d) 355]), and without regard to the alleged violation by respondent of section 10 of Ordinance No. 7691 of the City and County of San Francisco. (See *Hopkins* v. *Galland Mercantile Laundry Co.,* 218 Cal.

130 [21 Pac. (2d) 553].) There are numerous authorities in this state holding either expressly or impliedly that where the only rational conclusion to be drawn from the uncontradicted evidence is that the injured pedestrian was guilty of negligence which was the proximate cause or one of the proximate causes of his injury, said pedestrian is chargeable with contributory negligence as a matter of law and may not recover. (*Heiter* v. *Hirschfeld,* 205 Cal. 625 [271 Pac. 1051]; *Horton* v. *Stoll,* 3 Cal. App. (2d) 687 [40 Pac. (2d) 603]; *Anderson* v. *Market Street Ry. Co.,* 116 Cal. App. 282 [2 Pac. (2d) 529]; *Bence* v. *Teddy's Taxi,* 101 Cal. App. 748 [282 Pac. 392, 283 Pac. 86]; *Atkins* v. *Bouchet,* 65 Cal. App. 94 [223 Pac. 87]; *Ogden* v. *Lee,* 61 Cal. App. 493 [215 Pac. 122]; *Finkle* v. *Tait,* 55 Cal. App. 425 [203 Pac. 1031]; *Spring* v. *Tawa,* 49 Cal. App. 100 [192 Pac. 1051]; *Moss* v. *H. R. Boynton Co.,* 44 Cal. App. 474 [186 Pac. 631]; *Mayer* v. *Anderson,* 36 Cal. App. 740 [173 Pac. 174].) In my opinion, the uncontradicted evidence in this case brings it within the rule of the foregoing authorities in many of which, no question of the violation of a statute or ordinance by the pedestrian was involved.

The uncontradicted evidence in this case shows that the accident happened at about 9 P. M. on the evening of October 23d. Respondent alighted upon a safety zone and then attempted to cross Van Ness Avenue, starting his crossing between the two standing street cars. It is a matter of common knowledge that Van Ness Avenue was at all times a heavily traveled street and it was entirely lawful for automobiles as well as street cars to travel between the safety zones on said street. Respondent was therefore bound to anticipate traffic approaching from the south and going in a northerly direction between said zones. He was under a duty to "look carefully" in the direction from which traffic was to be anticipated before placing himself in a position of danger. (*Horton* v. *Stoll, supra,* p. 690; *Bence* v. *Teddy's Taxi, supra,* p. 752.) As was said in *Moss* v. *Boynton, supra,* at page 477, "In attempting to cross at that point a duty rested upon him to exercise a greater degree of care than if he were at an established crossing. (*Sheldon* v. *James,* (175 Cal. 474 [166 Pac. 8, 2 A. L. R. 1493]), *supra.*) This was particularly true if his view was to any extent obstructed by the jitney bus." Here

respondent was not crossing at an established crosswalk and his view was largely, if not entirely, obstructed by the street car which was standing in front of the one from which he had alighted. With the conditions as above indicated, respondent left his place of safety, attempted to cross the heavily traveled street and emerged from between the two street cars and directly into the path of appellant's automobile or, as the evidence seems to show, into the side of appellant's automobile, without first taking the precaution of ascertaining whether any traffic was approaching from the south. While respondent attempted to claim that he ''looked'', it is certain that he did not discharge his duty to ''look carefully'' under the circumstances. His own testimony is as follows: ''Q. Did you see the automobile that you collided with? A. I never seen it yet. Q. You never did see it? A. I ain't never seen it. Q. You didn't see it before you— A. I ain't never seen it. Q. (Continuing)—ran into it? A. Not up till this day, I ain't never seen it. Q. You don't know what kind of a car it was? A. I never seen it.'' The foregoing testimony and other testimony of respondent makes it impossible to reach a rational conclusion that respondent exercised the care required of him under the circumstances. It is difficult to conceive of a case in which the testimony would more irresistibly lead to the conclusion that the injured pedestrian was guilty of negligence which was a proximate cause, if not the sole proximate cause, of his injuries.

In my opinion appellant's motion for a directed verdict should have been granted and the judgment should be reversed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 9, 1937, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 8, 1937.