[Civ. No. 2286. Fourth Appellate District.—February 1, 1940.]

T. B. KETCHUM, Respondent, v. WILLIAM PATTEE
et al., Appellants.

124

Brittan & Mack for Appellants.

T. R. Claflin and Morris B. Chain for Respondent.

THOMSON, J., *pro tem.*—This is an appeal from a judgment based upon a verdict of a jury in an action for damages for personal injuries. On December 20, 1937, at about 6:45 A. M., plaintiff and respondent T. B. Ketchum left his home a few miles south of Bakersfield and proceeded in a Graham-Paige sedan south on Highway 99 to go to work. It was "a little bit misty" so he turned on his headlights and tail-light, which were still burning at the time of the accident in question. His motor stopped and he thought it was out of gas. He "kicked out the clutch" and coasted about 50 to 60 feet, where he applied his brakes and brought his automobile to a stop. He testified that he parked his automobile in a position on the west shoulder of the highway with the edge of the left fenders and running board about four inches west of the west lane of pavement. The traffic was light. At this point Highway 99 is outside of a business or residence district and it consists of three lanes of "ordinary rough non-skid pavement", the west lane and the middle lane each being 11 feet, 8 inches wide and the east lane being 12 feet wide. The pavement is flanked on each side by a shoulder of oiled macadam material with a dirt shoulder adjoining the oiled shoulders on each side of the highway, the dirt shoulder being "comparatively flat". A draftsman who measured the highway testified that the oiled shoulder was 7 feet wide and that the dirt shoulder was 9 feet wide from the west edge of the oiled shoulder to a row of young trees on the west side of the highway. Plaintiff, however, testified that his car was parked within two feet of the trees. When the sedan came to a stop plaintiff sat in the car for half a minute trying to determine what the difficulty was and what to do about it. He then

decided to step out of the car and ascertain if the car was out of gas. He opened the left front door, which was about 3 feet wide and hinged on the front, and started to back out, and, while his left foot was on the running board and his right foot on the floor board in the car, he glanced toward the rear of the car and discovered the headlights of a truck, driven by defendant Harold McBride and owned by defendant William Pattee, directly to the rear of his automobile "from 6 to 15 feet" away and bearing down upon him. He yelled to the truck driver, but was almost immediately struck by the truck and seriously injured. He stated that the truck lights were "very dim". Immediately after the collision the sedan was standing parallel to the highway with its left side about 3 or 4 feet in the west lane, the right side on the west shoulder and broken glass and other debris, together with one of plaintiff's shoes, were lying at the left side of the car. Plaintiff's body was lying 20 feet in front of his automobile. No damage occurred to plaintiff's sedan except to the left front door and to the body in front of the door where it had been swung forward against the cowl. A bent metal brace and a broken clearance light on the front of the right side of the truck body constituted the total damage to the truck. A sharp conflict arises as to the atmospheric conditions at the time. Plaintiff testified that there was a high fog, but that he could see from 100 to 300 yards, while the defendant driver maintained that the fog was low with only 20 to 30 feet of visibility. The captain of the highway patrol, who appeared at the scene of the accident shortly afterwards, testified that the visibility was from 100 to 150 feet. Defendant McBride testified that he was driving in the west lane of pavement 25 to 30 miles an hour and that he did not notice the tail-light on plaintiff's car, but he first saw the sedan when he was about 20 feet away; that plaintiff's car was parked about 2½ feet on the pavement; that he swerved his truck to the left, partly in the middle lane. At this instant, defendant said, the sedan door swung open and plaintiff alighted, getting one foot on the running board and one foot on the ground. He testified that his swerve was sufficient to clear the sedan and, while he tried to swerve again, he did not have time to clear the open door nor plaintiff's body.

Appellants rely upon four assignments of error in seeking a reversal of the judgment. The first is the contention that

the evidence shows that plaintiff was guilty of contributory negligence as a matter of law, and the others relate to three parts of an instruction offered by plaintiff and given to the jury, each of which appellants assert constituted prejudicial error.

Two reasons are offered by appellants in support of their contention that plaintiff was guilty of contributory negligence as a matter of law, namely, first, because he parked his car on the highway within the meaning of the Vehicle Code, when it was practicable to park off the highway; and second, when he stepped out of the left door of his automobile he left a place of comparative safety and entered a place of peril without taking any precaution for his own safety.

■ The case was tried by plaintiff on the theory that he was not negligent and the doctrine of last clear chance was not submitted to the jury, by instructions or otherwise, no instruction on that subject being offered. This, therefore, eliminates that doctrine from consideration on this appeal. (*Bence* v. *Teddy's Taxi*, 101 Cal. App. 748, 753 [282 Pac. 392, 283 Pac. 86] ; *Meincke* v. *Oakland Garage, Inc.*, 11 Cal. (2d) 255, 258 [79 Pac. (2d) 91].)

Sections 582 and 584 of the Vehicle Code, in effect at the time of the accident involved, governed the stopping of vehicles on the highway, so far as the facts of this case are concerned. Section 582 provides:

"Upon any highway outside of a business or residence district no person shall stop, park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled portion of the highway when it is practicable to stop, park or so leave such vehicle off such part or portion of said highway."

Section 584 of said Vehicle Code provides:

"The foregoing restrictions in this chapter shall not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such disabled vehicle upon such part or portion of said highway."

The fact that plaintiff coasted his car 50 to 60 feet after his motor stopped indicates that he had sufficient momentum to park his car as far to the west as the space would permit. Much doubt has arisen as to the meaning of the phrase "paved

or improved or main traveled portion of the highway'', as used in said sections of the Vehicle Code. In the case of *Silvey* v. *Harm*, 120 Cal. App. 561, 568 [8 Pac. (2d) 570], wherein the facts disclosed that there was a 20-foot pavement with an 8-foot dirt shoulder adjacent to the pavement, the court held that under those circumstances the expression ''main traveled portion of the highway'' had reference to the paved portion only where the pavement was wide enough for traffic and was mainly used for that purpose. The court said: ''In an open country district, normal traffic is ordinarily confined to the paved portion of the highway. The shoulders are used to serve in emergencies or during congested traffic.'' In *Scalf* v. *Eicher*, 11 Cal. App. (2d) 44, 50 [53 Pac. (2d) 368], a case involving the rights and duties of a pedestrian on the highway, the court took occasion, in passing, to refer to a statute then in effect and similar to sections 582 and 584 of the Vehicle Code, and said: ''This means that if there is a portion of the highway not frequently traveled, such portion is to be used if it can be done with safety. In many instances such part of a highway is a shoulder and necessarily a portion of the highway.'' Section 81 of the Vehicle Code defines ''highway'' as follows: '' 'Street' or 'highway' is a way or place of whatever nature, publicly maintained and open to the use of the public for purposes of vehicular travel.'' Generally speaking, all portions of highways in California are ''improved'' to some extent, but some portions are not improved nor designed for modern vehicular travel and are seldom used for such travel. ▪ We think the term ''improved portion'' of the highway mentioned in sections 582 and 584 of the Vehicle Code refers to a portion improved and ordinarily used for vehicular travel. ▪ Section 525 of the Vehicle Code provides that ''upon all roadways of sufficient width a vehicle shall be driven upon the right half of, and as close as practicable to the right-hand curb or edge of, such roadway''. It cannot be said that this section of the Vehicle Code makes it mandatory to drive on the right shoulder where an oiled or macadam or other substantial shoulder is constructed adjacent to the paved portion. The section undoubtedly has reference to the edge of the paved or ordinarily traveled portion of the highway (*Scalf* v. *Eicher*, *supra*). In the instant case there can be no doubt as to what is meant by the paved portion of the highway, as there were three

lanes of concrete pavement clearly marked for traffic in accordance with the provisions of section 526 of the Vehicle Code. This section provides that, where the roadway has been so divided and marked, "A vehicle shall be driven as nearly as practical entirely within a single lane." ▮ It is apparent from the sections of the Vehicle Code and the authorities which have been cited above, that the meaning of the term "main traveled portion of the highway", as used in sections 582 and 584 of the Vehicle Code, must depend upon the factual situation in each particular case, rather than upon the materials used or the type of road-bed adopted in constructing the highway. It is true that, where paved lanes exist, the expression "main traveled portion of the highway" ordinarily refers to such paved lanes, but it may include the shoulders also if they are ordinarily used for vehicular travel.

▮ There is no evidence in the present case which discloses whether the oiled shoulder was ordinarily or frequently used for vehicular travel or not so used, although the photographs in evidence indicate quite clearly that the oiled shoulders were easily available for such travel, and we cannot under the circumstances of this case assume that stopping on the oiled shoulder came within the purview of sections 582 and 584 of the Vehicle Code and was negligence *per se.*

▮ Appellants next contend that plaintiff was guilty of contributory negligence because he left a place of comparative safety and entered a place of peril when he stepped out of the left door of his automobile without taking precaution for his safety, and cite numerous cases to sustain this point. However, most of these are cases involving city street collisions between automobiles and pedestrians in which the plaintiffs actually walked or ran in front of oncoming vehicles without first looking. The case at bar presents a different factual situation. While there is conflicting proof, it is this court's duty to view the evidence "in the light most favorable to the plaintiff, and to see if there is any substantial evidence which would take the case to the jury on the question of contributory negligence". (*Rivera* v. *Hasenjaeger,* 29 Cal. App. (2d) 431, 432 [85 Pac. (2d) 167].) The jury may have believed from the evidence that plaintiff was not negligent in stopping his automobile on the shoulder of the highway, and that he was not yet out of the car when the collision occurred, but was partly in the car and partly on the running board.

There are authorities which hold that it is not negligence *per se* to ride on a running board. (*Strong* v. *Olsen,* 74 Cal. App. 518, 519 [241 Pac. 107] ; *Yates* v. *J. H. Krumlinde & Co.,* 22 Cal. App. (2d) 387, 391 [71 Pac. (2d) 298].) Again, the jury may have believed from the photograph in evidence showing the bent brace on the front of the truck body, which is in some distance from the right front corner of the truck bed, that the truck was traveling exceedingly close to the parked car and that a reasonable person, situated as plaintiff was, would not have anticipated that any vehicle would pass close enough to collide with him under the circumstances, in view of the proof to the effect that there was no north-bound traffic and that defendant had approximately 30 feet of paved highway and an additional 7 feet of oiled shoulder east of plaintiff's parked car on which to pass. Under the circumstances existing in this case the issue of whether or not plaintiff was negligent in stopping his car where he did stop it, or in starting to alight from it after it was parked, we think, was an issue of fact on which reasonable men might differ.

In any event, if the jury believed from the evidence that plaintiff was negligent, it was only one element of contributory negligence and was of no significance in the case unless they also believed from a preponderance of the evidence that such negligence proximately caused or contributed proximately to the injury. The issue of whether or not defendant was negligent was submitted to the jury and they might have believed that defendant was negligent and that his negligence was the sole proximate cause of the collision. When the evidence is conflicting and reasonable men might differ as to the inferences or conclusions which ought to be drawn from the evidence on the subject, the issue of proximate cause is also one for the jury to determine. (*Rivera* v. *Hasenjaeger, supra,* p. 433.)

As we have indicated above, the question of negligence on the part of the defendant and the question of contributory negligence on the part of the plaintiff were matters for the determination of the jurors and were properly submitted to them. A consideration of the instructions, therefore, becomes important. Plaintiff offered an instruction which was given by the court embodying the provisions of section 670 of the Vehicle Code requiring adequate brakes on motor vehicles and specifying standard stopping distances, and the jury was

informed that a violation of this statute is negligence *per se*. This instruction was inapplicable to the facts of this case. The only evidence relative to the condition of the brakes was the testimony of the defendant driver who testified that the truck was fully equipped with hydraulic brakes all in good condition. There was no evidence that defendant attempted to stop the truck before the collision. He testified that he endeavored to avoid striking plaintiff's car by swerving the truck to the left; that he only touched the brakes lightly when he swerved and when he saw plaintiff, then drifted past the sedan for about 50 or 60 feet without applying his brakes, and then applied the brakes and stopped the truck off the traveled portion of the highway. There is no evidence whatever to indicate that the brakes were in any way defective or failed to function properly.

The same instruction included a recital of section 528 of the Vehicle Code as follows: .

"Section No. 528 of the Vehicle Code says: 'The following rules shall govern the overtaking and passing of vehicles proceeding in the same direction, subject to the limitations and exceptions hereinafter stated:

" '(a) The driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof at a safe distance and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle.' "

The jury was also informed that a violation of said section 528 is negligence *per se*. This instruction and the statute referred to therein applies to drivers of vehicles overtaking and passing another vehicle proceeding in the same direction and has nothing to do with a situation where the car being overtaken and passed is parked. Counsel for respondent suggests that the word "proceeding", as used in said statute, means "headed or on his way". We cannot agree with that interpretation. The uncontradicted evidence, including the testimony of plaintiff himself, was that plaintiff's sedan was parked at the time of and for a short period before the accident. In the instant case this instruction was particularly inappropriate, for the plaintiff was in the act of alighting from his automobile when the accident happened, and defendant contended at the trial that, if plaintiff had not attempted to alight from the car and thus increase the hazard, the accident would not have happened, and defendant offered evidence to support this contention.

■ Appellants criticize the remainder of the same instruction and urge that it is prejudicial error. It is based on section 528, subdivision (b) of the Vehicle Code and is as follows:

"The driver of a motor vehicle, when traveling outside of a business or residence district and under other conditions where necessary to insure safety, shall give audible warning before overtaking a vehicle proceeding in the same direction."

This instruction also applies only to a car which is overtaking a vehicle proceeding in the same direction. Section 671 of the Vehicle Code, which was not mentioned in the instructions, provides that "Every motor vehicle when operated upon a highway shall be equipped with a horn," and subdivision (b) thereof contains the following provision: "The driver of a motor vehicle when reasonably necessary to insure safe operation shall give audible warning with his horn. Such horn shall not otherwise be used." It will be noticed that, when passing a vehicle proceeding in the same direction, the duty to sound the horn is mandatory and failure to do so is negligence as a matter of law; but in other situations the horn must be sounded only "when reasonably necessary to insure safe operation", and failure to blow the horn in such situations may or may not be negligence, depending upon the circumstances of the particular case. In the case at bar, defendant did not recall blowing his horn. The jurors were told by that instruction that such failure constituted negligence as a matter of law. They should have been informed that, whether or not it was his duty to blow his horn, depended upon whether or not it was reasonably necessary under the circumstances of the case as shown by the evidence. The instruction as given undoubtedly had the effect of withdrawing from the jury's consideration the question of whether or not defendant had time to blow the horn after discovering plaintiff's parked car in time to have prevented the injury, or any other circumstance which might have excused him from sounding the horn.

■ "The question of negligence on the part of defendant depended upon whether or not he used reasonable care under the circumstances disclosed by the evidence", and not upon whether or not he complied with those sections of the code referred to in the instruction complained of. (*White* v. *Davis,* 103 Cal. App. 531, 546 [284 Pac. 1086].) The evi-

dence was in conflict on the issue of negligence on the part of defendant as well as on the issue of contributory negligence on the part of plaintiff and it was the duty of the jury to determine these questions, but their deliberations on these issues should have been guided by proper and correct instructions. (*Duncan* v. *J. H. Corder & Son,* 18 Cal. App. (2d) 77, 82 [62 Pac. (2d) 1387]; *White* v. *Davis, supra.*) Although an instruction like the one complained of, which correctly states an abstract proposition of law but which is not applicable to the facts in the case, may under certain circumstances be harmless, still such an instruction is ground for reversal if it is calculated to mislead the jury (24 Cal. Jur., pp. 830–832; *Gregg* v. *McDonald,* 73 Cal. App. 748, 760 [239 Pac. 373]). The issues of negligence on the part of defendant and of contributory negligence on the part of plaintiff under the facts of this case were both such close questions that we cannot say from the record that the instruction complained of did not play an important part in the deliberations of the jury and cause confusion in the minds of the jurors as to the law which was applicable to the case. Under all of the circumstances of the case we are of the opinion that the giving of the instruction complained of was error prejudicial to the appellant.

The judgment is reversed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 26, 1940, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 30, 1940.