[Civ. No. 22111. Second Dist., Div. One. Aug. 23, 1957.]

MILTON HITCHCOCK, Respondent, v. MANUEL MACHADO TOSTA, Appellant.

George & Gibbs and A. A. George for Appellant.

Hansen, McCormick, Barstow & Sheppard and William B. Boone for Respondent.

FOURT, J.—This is an appeal by the defendant and cross-complainant from a judgment for the plaintiff and cross-defendant, in an action arising out of a collision between an automobile and a parked truck.

The plaintiff brought an action to recover damages to plaintiff's truck and trailer alleging, among other things, that the collision in question was caused by the negligence of Tosta in the operation of his automobile. Tosta filed an answer denying any negligence and pleading contributory negligence upon the part of the plaintiff, and also filed a

cross-complaint wherein he alleged, among other things, that the damages to his person and automobile were caused by the negligence of the cross-defendant. An answer was filed by the cross-defendant wherein cross-defendant denied any negligence and pleaded contributory negligence upon the part of Tosta.

A trial was had before a jury, which returned a verdict for the plaintiff for the damages to plaintiff's truck and trailer. The cross-complainant was denied recovery under his cross-complaint.

 A résumé of the facts, from a reading of the testimony, is as follows: Vernon Kelly, the plaintiff's truck driver, left Santa Maria with a loaded tank truck and trailer early on the morning of August 31, 1954. When he reached the top of Cottonwood Pass on Highway 41, at about 7 o'clock a. m., he parked the truck and trailer heading easterly with the left wheels about 2 feet off of the main traveled portion of the highway "right against the edge of the mountain," where there was "not another inch" of space to the right, and where it was impossible to park any farther to the right because of the embankment. The place where the driver stopped was the only place for a distance of 6 miles to the west from the top of the grade where a truck and trailer could be pulled off of the highway, to the end that the brakes and other equipment could be tested.

The driver of the truck had driven the route many times and knew that there was a dangerous downgrade for about 3 to 5 miles for easterly traffic, after leaving the top of the pass, and he stopped to check his brakes as a matter of precaution. After checking the brakes on each wheel, the driver was preparing to drive the truck back onto the highway.

The main traveled portion of the highway between the shoulders was about 16 to 17 feet wide. The shoulders were partly paved and partly dirt, but there was a distinct line between the main traveled portion of the pavement and the shoulder.

There was a space of about ten feet between the left side of the truck and the center of the highway, which was unobstructed and open for the free passage of other vehicles on the road. There was a clear view of the truck and trailer for a distance of 400 feet in each direction. Tosta was driving his 1952 Oldsmobile automobile easterly on Highway Number 41 at about the same time and place. He contended that the truck and trailer was parked at a point ten feet

to the south of the center line of the highway, but that it was partially on the main traveled portion of the highway. Tosta was driving about 50 to 60 miles per hour on a curved, mountainous road. He had traveled the road many times and knew, or should have known, that trucks customarily stopped and parked where the particular truck in question was stopped. Tosta was blinded by the rising sun and could not see clearly ahead, and did not see the truck and trailer. The right front of the Tosta automobile hit the left rear of the trailer with such force that the trailer axle of forged steel was bent forward to about a 35-degree angle, the trailer tires were cut and torn and the trailer was moved forward about 1½ feet, even though the truck and trailer was loaded with about 20 tons of road oil. There were no approaching vehicles from the east, and Tosta had at least 20 feet of clear, unobstructed roadway within which to travel. After the accident Tosta said to Kelly, "he was sorry and that the sun blinded him, and that it was all his fault."

The appellant contends that the evidence is insufficient to support the verdict, that the jury abused its discretion, that the trial court erred and abused its discretion in comments made to the jury. Reference to the facts indicates an ample showing of negligence upon the part of Tosta. His vision was obscured and almost completely blinded by the sun, yet he continued to drive at an excessive rate of speed, without due control of his automobile, and then drove off the roadway onto the shoulder, where he collided with the trailer. The entire width of the main traveled portion of the highway was unobstructed and there was a clear view of the truck and trailer for about 400 feet.

Section 582 of the Vehicle Code of California reads as follows:

"§ 582. Stopping, Standing or Parking of Vehicles in Unincorporated Areas. Upon any highway in unincorporated areas no person shall stop, park or leave standing any vehicle, whether attended or unattended, upon the main traveled portion of the highway when it is practicable to stop, park or so leave such vehicle off such part or portion of said highway but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle shall be available from a distance of 200 feet in each direction upon such highway. This section shall not apply upon a highway where the roadway is bounded by adjacent curbs.

"This section shall not apply to the driver of any vehicle which is disabled in such a manner and to such extent that it is impossible to avoid stopping and temporarily leaving such disabled vehicle on the main traveled portion of a highway."

 What is and what is not the "main traveled portion of the highway," as referred to in section 582, must depend on the factual situation in each particular case, rather than upon the materials used or the type of road bed adopted in constructing the highway. (*Ketchum* v. *Pattee*, 37 Cal.App. 2d 122, 128 [98 P.2d 1051].) In this case the jury heard the testimony to the effect that the truck and trailer was entirely removed from the main traveled portion of the highway, and even though there had not been such testimony there was ample evidence in the record that it was not practicable to park any farther to the south of the main traveled portion of the highway because of the embankment, and it was undisputed that there was an unobstructed width of the highway opposite the truck for the free passage of vehicular traffic.

We are of the opinion that the features complained of by the appellant were questions of fact, and the jury decided such questions against him upon substantial evidence.

 As to the claimed misconduct of the judge, we see no merit in the contentions of the appellant. Kelly was testifying on direct examination and was relating, in effect, that it was routine practice to stop and check the equipment and brakes before going down a long, dangerous grade. The following then took place:

"THE COURT: It's a good practice.

"MR. BARSTOW: Pardon me, Judge?

"THE COURT: It's a good practice. We have the Cuesta Grade where I guess they don't check them sometimes, and they come booming down there."

On cross-examination of Kelly the following also took place:

"Q. In other words, you didn't make the stop because the truck was disabled in any way, disabled from some mechanical defect, or something of the kind? A. Well, I'll say this: I was checking to see if there was anything.

· · · · · · · · · · · ·

"THE COURT: Not stopped for correcting anything.

"MR. GEORGE: I beg pardon.

"THE COURT: He wasn't correcting anything.

"Q. You just stopped to check your brakes?

"MR. GEORGE: Q You didn't run out of gas, or a wheel didn't break down, or anything like that? A No.

"Q Your axle wasn't broken? A No.

"Q You wanted to see if everything was in good shape? A That's right.

"THE COURT: He is a good driver, I still say.

"MR. GEORGE: Oh, yes; they all have to do that for the safety of everybody.

"THE COURT: Well, some of them don't.

"MR. GEORGE: That's true."

There was no objection to any remark, no instruction was offered to correct any so-called improper implication, and in fact, counsel in substance agreed with the comments of the judge. It is fundamental that an appellant cannot, for the first time on appeal, complain of the court's remarks when any error could have been corrected at the time by simply requesting an appropriate instruction.

The judgment is affirmed.

White, P. J., and Drapeau, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.