688 So.2d 602 (1996)
Leonard STANDEFORD and Kim Standeford
v.
WINN DIXIE OF LOUISIANA, INC. and
Scott Sherlock.
No. 96-CA-088.
Court of Appeal of Louisiana, Fifth Circuit.
December 30, 1996.
Writ Denied March 21, 1997.
*603 Lawrence J. Smith, Lawrence J. Smith & Associates, New Orleans, Scott T. Minvielle, Metairie, for plaintiffs-appellants.
Paul M. Lavelle, Guste, Barnett & Shushan, New Orleans, for plaintiff-appellee Winn Dixie Louisiana, Inc.
David P. Curlin, Trinchard & Trinchard, New Orleans, for defendant-appellant Scott Sherlock.
Before GAUDIN and WICKER, JJ., and McCABE, J. Pro Tem.
GAUDIN, Judge.
Leonard Standeford was injured on July 19, 1990 when his GMC truck was rear-ended by another pickup truck in Jefferson Parish, Louisiana. The impact was slight; Standeford's four-year-old son, riding with his father, was not injured.
After a 10-day jury trial in the 24th Judicial District Court in March, 1995, Standeford *604 was awarded $10,000.00 for past and future pain, suffering and mental anguish and $500.00 for past and future medical expenses.
For the following reasons, we increase the jury award to $75,000.00 for aggravation of a preexisting back condition and to $10,000.00 for past and future medical costs. We affirm the jury's obvious finding that Standeford did not suffer an organic brain injury.
On appeal, Standeford contends:
(1) that the jury, after finding that the defendant driver's negligence caused his (Standeford's) injuries, abused its discretion in awarding only $10,500.00;
(2) that the trial judge erred in severely limiting the testimony of four witnesses, Drs. Antoinette Appel, Mariusz Ziejewski, John Olson and Carmen Palazzo, particularly in their attempt to show the existence of organic brain damage, and
(3) that the trial judge also erred in not allowing questioning of jurors about a national TV program, "60 Minutes," which stated that people who claim damages following low-impact, rear-end collisions are "thieves and frauds."
At trial, Standeford sought compensation for an organic brain injury and for aggravation of a preexisting back problem.

BRAIN DAMAGE CLAIM
The jury did not find brain damage, Standeford contends, because the trial judge mistakenly curtailed testimony of key expert witnesses.
Standeford's major witness in trying to prove a brain injury was Dr. Appel, a neuropsychologist who saw Standeford one time, on February 2, 1995 in Florida, and performed various tests she described in considerable detail. She said, over and over, that the tests demonstrated organic brain damage. She said that Standeford's present IQ was 86, approximately a 14-point drop off from an earlier IQ she estimated at 100. Standeford had graduated from high school and spent three years at Southeastern Louisiana College. The only way a person can have a lessening of intellect like this, Dr. Appel stated, is if that person had sustained organic brain damage.
The trial judge permitted Dr. Appel to testify as to Standeford's condition but would not let her testify as to the cause of that condition. The trial judge said:
"... for purposes of testifying here today you're qualified as a neuropsychologist, and I'm limiting you to what your testing is and the deficiencies shown by these tests ..."
In proffered testimony, Dr. Appel explained how, in her judgment, the rear-end collision caused Standeford's brain to slide forward and strike the inner table of the frontal bone and then bounce back and hit the inner table of the occipital portion of skull.
Dr. Ziejewski, a bio-mechanical engineer, testified about inertia and what happens, mechanically, to a person involved in a whiplash-type accident. He said that the body is pushed forward but the head resists; however, because Dr. Ziejewski was not a physician and had no medical training, the trial judge would not allow him to give medical testimony.
Dr. Olson, a neurologist who has treated Standeford since November 30, 1988, was asked if he thought that Standeford, more probable than not, had suffered an organic brain injury. He said yes because of two reasons: (1) Dr. Appel's report, which he read just before trial, and (2) because Standeford hasn't "bounced back." Dr. Olson was not permitted by the trial judge to testify about the mechanics allegedly involved in this accident. He was restricted to medical testimony.
Dr. Palazzo, a psychiatrist, saw Standeford in October 1992 at the St. Jude Medical Center after Standeford took an overdose of pills in an apparent suicide attempt, Dr. Palazzo said:
"I wasn't really sure what was going on at that point in time. We have a man who has a history of having had some physical trauma. His family was not very forthcoming. He has a history of depression. I did not have the luxury of obtaining any *605 psychological testing that had been done on him. You know, certainly an organic component had to be considered."
In proffered testimony, Dr. Palazzo said that she did not diagnose an organic basis for Standeford's complaints while he was at St. Jude Medical Center, but, later after reviewing various reports, including Dr. Appel's and Dr. Olson's, she concluded that Standeford did in fact have chronic brain damage and that it was caused by the July 19, 1990 vehicular accident.
At trial, Dr. Palazzo was limited to psychiatric testimony about Standeford's stay at St. Jude Medical Center, from October 13 to 24, 1992.
This was a difficult case to try. There were numerous objections; time after time the jury was removed. Standeford's major trial counsel did not become attorney of record until shortly before trial and much of Standeford's trial evidence was assembled relatively late. An amended pretrial list of witnesses was filed on January 17, 1995, listing thereon Dr. Appel who would testify, according to submitted document, that Standeford had organic brain damage. Dr. Appel did not actually see Standeford until February 2, 1995.
We cannot say that the trial judge's rulings while Drs. Appel, Ziejewski, Olson and Palazzo were testifying constituted an abuse of discretion or that any of the rulings, considering the entire record, seriously prejudiced Standeford's case. It is well-settled that expert witnesses should not be permitted to testify beyond their expertise. Here, the trial judge fairly and reasonably prevented that from happening.
We are aware of the Louisiana Supreme Court's holding in Jones v. Black, 676 So.2d 1067 (La.1996), which requires remand and a new trial when the trial judge's improper actions taints the jury's verdict in a close case. The trial judge in Standeford's case, however, did not blemish the verdict. It appears, from a reading of the entire record, that the jury based its decision on a firsthand view of the witnesses and a weighing of the properly and equitably admitted testimony of evidence.
There was substantial medical testimony denying that Standeford had organic brain damage, including that of Drs. John Galloway, a psychotherapist; Richard Roniger, a psychiatrist; and Carlos Kronberger, a psychologist. All three said that while Standeford was depressed, there was no organicity. Drs. Kronberger and Roniger both stated that Standeford was able to return to work in 1993 and that this would have been a good therapeutic process for him. Standeford hasn't worked since 1987.
Carla Seyler, a vocational rehabilitation counselor, also testified that Standeford could work.
The record fully supports the jury's rejection of the claim for organic brain damage despite Dr. Appel's 11th hour examination and testimony.

BACK INJURY
Prior to the sued-on vehicular accident in 1990, Standeford had slipped and fell in a Winn Dixie supermarket in 1986 and hurt his back. He sued his employer, Coca-Cola, and Winn Dixie. This lawsuit was settled in June, 1991, one month before the instant suit was filed.
Dr. Olson was asked if the July, 1990 accident aggravated the preexisting back problem. "No question about that," he said.
In August, 1991, Dr. Olson referred Standeford to Dr. John Jackson, a neurosurgeon. Finding a disc herniation at C4-C5, Dr. Jackson performed fusion surgery on October 4, 1991. Standeford told Dr. Jackson that his cervical problems began after July, 1990, thereby ignoring the extensive back treatments he had received starting in 1986 after the slip and fall.
Before July, 1990, Standeford had complained to Dr. Olson about severe neck pain radiating into his left arm. While medical testimony does not show that the July, 1990 accident caused the October 4, 1991 surgery by Dr. Jackson, there was an aggravation of a previous back condition, as found by the jury. The award, however, was not adequate. Possibly the main reason the award was low was the fact that the truck Standeford *606 was in was not hit hard. There was no damage to the pickup that rear-ended Standeford's pickup. Damage to Standeford's vehicle was only $129.17 for a slight dent in the right rear bumper. A photograph of the back segment of Standeford's truck is in evidence and also attached to and incorporated into this opinion.
Nonetheless, the lowest amount the jury could have awarded, once an aggravation was found, was $75,000.00 for pain, suffering, mental anguish and lingering depression, and $10,000.00 for past and future medical expenses. Admittedly, these increases cannot be justified by a precise mathematical formula although it is clear that the amounts awarded by the jury were not sufficient.
The jury denied a claim by Standeford's wife Kim for loss of consortium. This was supported by the record which indicates that before July, 1990, Standeford was irritable and a "couch potato" and that the couple's sexual relations were infrequent.
Finally, we do not see substantial error in the failure to ask prospective jurors about the TV program. Voir dire questioning was protracted and thorough and it appears, from the record, that no jurors were biased against lawsuit petitioners.
For these reasons, we increase the jury's awards to $75,000.00 and $10,000.00, as previously stated. Each side is to bear its respective court costs.
AMENDED AND RENDERED.
PATRICK J. McCABE, J. Pro Tem., dissents in part.
*607 
PATRICK J. McCABE, Judge Pro Tem, dissenting in part.
I concur in the majority's affirmation of the jury's finding that Mr. Standeford did not suffer an organic brain injury as a result of the accident of July 19, 1990.
I also concur with the majority in finding that the actions of the trial judge regarding limitations placed on the testimony of Dr. Antoinette Appel, Dr. Mariusz Ziejewski, Dr. John Olson, and Dr. Carmen Palazzo, and the refusal of the Court to grant plaintiff's request to question jurors about a "60 Minutes" TV program, did not constitute reversible error.
I respectfully dissent from the decision of this Court to amend the jury's damage award. I agree that Mr. Standeford sustained an aggravation of a pre-existing back injury. The jury took this into account in making its award. I find nothing in the record which would indicate to me that the jury's award was an abuse of discretion. Accordingly, I would affirm the jury's damage award.