Filed 7/21/16  Valdez v. Curameng CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| DORA ELIZABETH VALDEZ, | B261227 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. KC065376) |
| EDGAR REYES CURAMENG et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment and order of the Superior Court of Los Angeles County.  James A. Kaddo, Judge.  Affirmed.

Ross S. Heckmann for Plaintiff and Appellant.

Calendo Puckett Sheedy, Christopher M. Sheedy and Arnold S. Levine, for Defendants and Respondents.

* * * * * *

A jury concluded that Dora Elizabeth Valdez's (plaintiff's) ailments were not caused by defendant Edgar Reyes Curameng's (defendant's) admittedly negligent act in rear-ending her car on the freeway.  On appeal, plaintiff argues that she is entitled to a new trial or a directed verdict in her favor on the issue of causation because (1) the trial court should have precluded defendant's biomechanics expert from testifying, (2) the special verdict form incorrectly submitted the issue of causation to the jury, and (3) the jury's finding of no causation was not supported by substantial evidence.  Because plaintiff's arguments lack merit, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.      Facts

In January 2011, defendant's sport-utility vehicle (SUV) rear-ended plaintiff's truck on the I-605 freeway in "heavy," rush-hour traffic.  After the two exchanged information, plaintiff drove to a work-related appointment.  Later that night, she started feeling neck pain and, a week later, began consulting a physical therapist for three or four months.  More than a year later, she had rotator cuff surgery.

### II.     Procedural Background

#### A.      *Complaint*

In January 2013, plaintiff sued defendant and Iress Caguiat (Caguiat) for negligence.[1]

#### B.      *In limine rulings on expert testimony*

Prior to trial, defendant designated two expert witnesses:  (1) an engineer, as an accident reconstruction and biomechanics expert, to opine on the physics of the accident, how those forces affected plaintiff, and the "reasonableness and necessity" of plaintiff's subsequent medical treatment; and (2) an orthopedic surgeon, as a medical expert, to

---

[1]      Caguiat is named in the complaint and the judgment, but is otherwise absent from the litigation.  Ostensibly, Caguiat is the registered owner of the vehicle defendant was driving.  Because plaintiff's claims against defendant and Caguiat turn on defendant's liability, our analysis of defendant's liability applies with equal force to both.

opine on the reasonableness and medical necessity of plaintiff's subsequent medical treatment. Plaintiff moved in limine to preclude the biomechanics expert from testifying at all, and to preclude the medical expert from testifying on the topic of biomechanics.

The trial court partly granted and partly denied plaintiff's motions. The court ruled that the biomechanics expert would "be allowed to testify as to the mechanics of the impact and its effect on human anatomy," including whether "the force of the impact was sufficient to cause an injury." However, the biomechanics expert "would be precluded from testifying as to medical issues." The court ruled that the medical expert would "be allowed to testify to medical issues within his expertise as an orthopedic surgeon, but not as an accident reconstructionist."

### C.    Trial

The matter proceeded to trial. Before jury selection began, the trial court informed the jury venire—based on a pretrial statement of the case prepared by the parties—that defendant "admits that . . . he was negligent" but "disputes the extent, the kinds of injuries, [and] the amount of the damages."

Plaintiff and defendant each testified as percipient witnesses.

Plaintiff's medical expert opined that plaintiff's soft tissue and rotator cuff injuries were "directly related to the motor vehicle accident."

Defendant's biomechanics expert opined that (1) defendant's SUV was traveling 10 to 14 miles per hour faster than plaintiff's truck when defendant's SUV struck her truck from behind, (2) the impact caused plaintiff's truck to accelerate by six to eight miles per hour, and (3) "the forces in this case . . . are just not consistent" with a "traumatic shoulder injury" and that the "most likely outcome is that of no injury." The expert based his first conclusion on photographs of the parties' vehicles, the repair estimates for those vehicles, a comparison of that damage to the damage documented in crash testing of identical or similar vehicles at various speeds, and on the fact that the airbags in defendant's SUV never deployed. The expert based his second conclusion on calculations driven by "Newtonian physics." The expert based his final conclusion on his

3

education and knowledge about the "structure and function" of "musculoskeletal tissue"—namely, that rotator cuff injuries are caused by a "jamming force" from a "significant frontal impact," not a "rear-end collision."

Defendant's medical expert acknowledged that plaintiff had suffered a tear in one of the four rotator cuff muscles. However, he opined that "you can't tear" that particular muscle "with your arms in front of you" on the steering wheel when rear-ended from behind. Additionally, if the accident had itself caused the tear, plaintiff would have experienced "significant severe pain." As a result, he opined that plaintiff's rotator cuff injury was not related to the car accident and was instead the likely product of degeneration of her rotator cuff muscles common to most people when they, like plaintiff, have reached their 40's or 50's. The expert took no position on whether the accident caused her claimed soft tissue injury. He nevertheless noted, if he accepted as true her complaints about soft tissue pain, that pain would be consistent with temporary irritation of the pre-existing degeneration of her rotator cuff muscles and could reasonably warrant "care and treatment for a couple of months."

### D.    *Special verdict form*

The parties agreed that the jury need not decide the question of defendant's negligence. Plaintiff also wanted to remove the question of causation from the jury, and urged that the jury be asked only to determine damages. The trial court refused plaintiff's request on the ground that causation was in dispute.

The special verdict form the court submitted to the jury had two questions. The first question stated: "[Defendant] was negligent. Was such negligence a substantial factor in causing harm to the plaintiff?"

The jury answered the question, "No," and the trial court subsequently entered judgment for defendant.

### E.    *Posttrial motions*

Plaintiff filed a motion for a new trial and for partial judgment notwithstanding the verdict (JNOV) on the issue of causation. Specifically, she argued that (1) the special

4

verdict form should not have asked the jury to find causation because the issue was undisputed, and (2) substantial evidence did not support the jury's special verdict finding of no causation. The trial court denied the motion, concluding that the issue of causation was "hotly contested," which required the issue to be submitted to the jury and constituted substantial evidence supporting its finding of no causation.

### F.    Appeal

Plaintiff timely appeals.

## DISCUSSION

## I.    Motion for New Trial

On appeal, plaintiff argues that she is entitled to a new trial because (1) the trial court did not preclude defendant's biomechanics expert from testifying, and (2) the special verdict form improperly submitted the question of causation to the jury. Although we independently review the trial court's denial of a motion for new trial (*Nazari v. Ayrapetyan* (2009) 171 Cal.App.4th 690, 693-694), we review the specific issue of the admissibility of expert testimony for an abuse of discretion (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773 (*Sargon*)), and review de novo the specific issue of a special verdict form's content (*Dickson v. Burke Williams, Inc.* (2015) 234 Cal.App.4th 1307, 1312).

### A.    Admission of testimony from defendant's biomechanics expert

Plaintiff appears to be raising two objections to the trial court's ruling allowing defendant's biomechanics expert to testify regarding the mechanics of the impact and its effect on human anatomy: (1) the expert was not qualified to render a medical opinion regarding causation (see, e.g., *Smelser v. Norfolk Southern Ry. Co.* (6th Cir. 1997) 105 F.3d 299, 305 (*Smelser*) [biomechanics expert cannot render medical opinion]; *Combs v. Norfolk & W. Ry.* (Va. 1998) 507 S.E.2d 355, 358-359 (*Combs*) [same]; *Standeford v. Winn Dixie* (La.Ct.App. 1996) 688 So.2d 602, 605 (*Standeford*) [same]); and (2) biomechanics is a "new scientific technique" that should be excluded under *People v. Kelly* (1976) 17 Cal.3d 24 (*Kelly*).

5

Plaintiff's first objection lacks merit for the simple reason that defendant's biomechanics expert did not offer a medical opinion. The expert opined that the forces he determined were at issue were "not consistent" with a "traumatic shoulder injury," *not* that those forces did or did not specifically cause plaintiff's injury. These are distinct topics, and most of the cases plaintiff cites allow a biomechanics expert to testify to the former, but not to the latter. (*Smelser*, *supra*, 105 F.3d at p. 305; *Standeford*, *supra*, 688 So.2d at p. 604.)

More to the point, a trial court acts within its discretion under California law in allowing an expert to testify on a topic if it is (1) "based on matter of a type on which an expert may . . . reasonably rely," (2) "based on reasons []supported by the material on which the expert relies," and (3) not "speculative." (*Sargon*, *supra*, 55 Cal.4th at pp. 771-772; Evid. Code, §§ 801 & 802.) Here, the trial court did not abuse its discretion in concluding that the testimony of defendant's biomechanics expert satisfied these criteria. The expert explained that he determined the relative speed of the two vehicles by comparing the damage they sustained to the damage sustained by identical or similar vehicles in tests at various speeds; used principles of Newtonian physics as well as math to calculate the change in acceleration to plaintiff's truck; and opined that the strength and direction of those forces could not, as a general matter, have caused the type of injury plaintiff sustained. The expert's conclusions are supported by his reasons and are not speculative. They are also based upon evidence on which an expert can reasonably rely, as evidenced by the numerous cases that have discussed the testimony of biomechanics experts without finding that testimony to be objectionable. (E.g., *People v. Duenas* (2012) 55 Cal.4th 1, 17-18; *Romine v. Johnson Controls, Inc.* (2014) 224 Cal.App.4th 990, 998; *DePalma v. Rodriguez* (2007) 151 Cal.App.4th 159, 164-165; *Greer v. Buzgheia* (2006) 141 Cal.App.4th 1150, 1153; *Doupnik v. General Motors Corp.* (1990) 225 Cal.App.3d 849, 864-865; *Pineda v. Los Angeles Turf Club, Inc.* (1980) 112 Cal.App.3d 53, 61-62.) To be sure, *Combs* held that a biomechanics expert could not offer even general testimony about causation, but it did so because it adhered to the

principle that only medical doctors can state medical opinions. (*Combs*, *supra*, 507 S.E.2d at pp. 358-359; see also *Mattek v. White* (Fla.Dist.Ct.App. 1997) 695 So.2d 942, 943-944 [following similar state-law-based rule].) California does not follow such a strict principle. (See, e.g., *People v. Catlin* (2001) 26 Cal.4th 81, 131-132 ["[q]ualifications other than a license to practice medicine may serve to qualify a witness to give a medical opinion"]; *People v. Villarreal* (1985) 173 Cal.App.3d 1136, 1142 [same].)

Plaintiff's second objection is without merit because *Kelly*, *supra*, 17 Cal.3d 24 does not at this time apply to biomechanical testimony. *Kelly*'s additional requirement that a party show the reliability of its expert's technique applies to "'that limited class of expert testimony which is based, in whole or part, on a technique, process, or theory which is *new* to science and, even more so, the law.'" (*People v. Leahy* (1994) 8 Cal.4th 587, 605, quoting *People v. Stoll* (1989) 49 Cal.3d 1136, 1156; *People v. Bui* (2001) 86 Cal.App.4th 1187, 1195 [*Kelly* applies to "novel devices or processes"].) The biomechanics expert's testimony was based in large measure upon the laws of physics, which are anything but novel. To the extent that testimony went beyond physics, the process of assessing the speed of impacts by collisions and examining whether the resulting forces can generally cause (or not cause) certain types of injuries has been the subject of expert testimony in California courts for decades, as the above-cited cases indicate. We are mindful that other jurisdictions have come to different conclusions (*Santos v. Nicolos* (N.Y.Sup.Ct. 2009) 879 N.Y.S.2d 701, 703-704; *Clemente v. Blumenberg* (N.Y.Sup.Ct. 1999) 705 N.Y.S.2d 792, 799-800), but California has taken a different path.

Even if the trial court had erred in allowing the biomechanics expert to testify about whether the forces he calculated could have categorically caused (or not caused) the type of injury plaintiff sustained, it is not reasonably probable that the erroneous admission of that testimony would have led to a different result. (*Nevarrez v. San Marino Skilled Nursing & Wellness Centre, LLC* (2013) 221 Cal.App.4th 102, 123;

7

Cal. Const., art. VI, § 13.) That is because defendant's medical expert also independently opined that plaintiff could not have sustained her rotator cuff injury based on a rear-end collision.

### B.     *Special verdict form*

Plaintiff also appears to be asserting on appeal that the trial court erred in submitting the question of causation to the jury and should not have asked the jury whether defendant's negligence was a substantial factor in causing her injuries. We conclude there was no error. Causation is an element of negligence (*Tribeca Companies, LLC v. First American Title Ins. Co.* (2015) 239 Cal.App.4th 1088, 1114), and causation turns on a finding that the defendant's negligence "was a substantial factor in bringing about the plaintiff's harm" (*Sandoval v. Bank of America* (2002) 94 Cal.App.4th 1378, 1385). Because "[a] special verdict is 'fatally defective' if it does not allow the jury to resolve every controverted issue" (*Saxena v. Goffney* (2008) 159 Cal.App.4th 316, 325 (*Saxena*)), a trial court is required to seek a special verdict finding as to every element on which there is a dispute.

Here, the issue of causation was disputed as to *both* of plaintiff's claimed injuries—that is, her soft tissue injury and her rotator cuff injury. Plaintiff's medical expert opined that the accident caused both; defendant's biomechanics expert opined that the accident caused neither; and defendant's medical expert opined that the accident did not cause the rotator cuff injury and took no position on her soft tissue injury. Even if we ignored this evidence and agreed with plaintiff that the parties had agreed that her soft tissue injuries were caused by the accident, there is no question that the causal link between the accident and her rotator cuff injury *was* disputed. Entirely deleting the question of causation from the special verdict form would have taken the partially contested issue of causation away from the jury, thereby creating a "fatal defect[]" in the verdict. (*Saxena*, *supra*, 159 Cal.App.4th at p. 325.)

Plaintiff offers one further argument. She contends that defendant conceded the issue of causation by agreeing to the summary of the case the trial court read to the jury

prior to voir dire.  We disagree.  On its face, the agreed-upon statement indicated that defendant admitted negligence, but disputed "the extent, the kinds of injuries, [and] the amount of the damages."  This is not a concession of causation.  Even if it were, it was a statement read by the judge; it was not evidence or a stipulation of the parties.

## II.     Motion for JNOV

Plaintiff contends that she is entitled to a partial JNOV on the issue of causation. """"The trial court's power to grant a motion for JNOV is the same as its power to grant a directed verdict.  [Citation.]"""" (*Taylor v. Nabors Drilling USA, LP* (2014) 222 Cal.App.4th 1228, 1237.)  The court's task is to assess whether """"substantial evidence . . . support[s] the jury's verdict."""" (*Ibid.*)  In assessing the substantiality of the evidence, a court must "'resolve all conflicts in favor of the prevailing party and . . . indulge all legitimate and reasonable inferences to uphold the verdict if possible.'" (*J.P. v. Carlsbad Unified School Dist.* (2014) 232 Cal.App.4th 323, 333.) The evidence """"must be reasonable in nature, credible, and of solid value."""" (*Ibid.*) We independently review the substantiality of the evidence.  (*Stephens & Stephens XII, LLC v. Fireman's Fund Ins. Co.* (2014) 231 Cal.App.4th 1131, 1143.)

Substantial evidence supported the jury's finding that defendant's negligence did not cause plaintiff's injuries.  Defendant's biomechanics expert so testified, and his testimony is sufficient by itself to support the verdict.  (E.g., *Darling v. Pacific E. R. Co.* (1925) 197 Cal. 702, 708-709; *Wise v. DLA Piper LLP (US)* (2013) 220 Cal.App.4th 1180, 1191-1192.)  Defendant's medical expert also testified that there was no causation as to the rotator cuff injury and did not opine on the soft tissue injury.

Plaintiff makes two arguments.  First, she argues that defendant's medical expert testified—inconsistently with his biomechanics expert—that the soft tissue injury *was* caused by the accident and that her own expert testified that all of plaintiff's injuries were caused by the accident.  Plaintiff misstates the record with respect to defendant's medical expert.  Moreover, we are required to "disregard[] conflicting evidence" when reviewing a verdict for substantial evidence (*Webb v. Special Electric Co., Inc.* (2016) 63 Cal.4th

9

167, 192), so these evidentiary consistencies are of no consequence.  Second, plaintiff asserts that we may not consider the biomechanics expert's testimony because it was wrongly admitted.  This assertion is incorrect because, as noted above, that testimony was properly admitted.

## DISPOSITION

The judgment and order are affirmed.  Defendant and Caguiat are entitled to their costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.</u>

_____, J.
HOFFSTADT

We concur:

_____, P.J.
BOREN

_____, J.
ASHMANN-GERST

10